UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GENERAL CONVENTION OF THE )<br>NEW JERUSALEM IN THE UNITED )<br>STATES OF AMERICA, INC., THE )<br>MASSACHUSETTS ASSOCIATION )<br>OF THE NEW JERUSALEM )<br>(SWEDENBORGIAN) and GEORGE )<br>CHAPIN, )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>EDWARD MACKENZIE, THOMAS )<br>KENNEDY, BOSTON SOCIETY OF )<br>THE NEW JERUSALEM, )<br>INCORPORATED (SWEDENBORGIAN) )<br>and BOSTONVIEW CORPORATION, )<br>    Defendants. )  | CIVIL ACTION<br>NO. 04-10419-WGY |

**DEFENDANTS EDWARD MACKENZIE AND THOMAS KENNEDY'S
MOTION TO DISMISS THE COMPLAINT**
(**Memorandum Incorporated**)

**INTRODUCTION**

Defendants Edward MacKenzie ("Mr. MacKenzie") and Thomas Kennedy ("Mr. Kennedy") move pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Complaint in its entirety. Plaintiff George Chapin ("Mr. Chapin" or "plaintiff"), on behalf of himself and derivatively on behalf of the Boston Society of the New Jerusalem, Inc. (the "Church"), and Bostonview Corp. ("Bostonview"), has asserted RICO claims pursuant to 18 U.S.C. §1962(b), (c) and (d) against Messrs. MacKenzie and Kennedy. The Court should dismiss these claims (Counts I-III) because plaintiff lacks standing and has failed to state actionable RICO claims where plaintiff has not pled any

actual injury, nor a "pattern" of racketeering activity, nor cognizable predicate acts of racketeering. Plaintiff has also failed to meet the requirements to assert a derivative claim. Upon the dismissal of the RICO claims, the Court should exercise its discretion to dismiss the remainder of the Complaint for lack of subject matter jurisdiction.[1]

The Complaint asserts in a conclusory fashion that Messrs. MacKenzie and Kennedy have engaged in a wrongful racketeering scheme to gain control of the Church which owns an apartment house with an alleged value of approximately $30 million. (Complaint, ¶1) The alleged purpose of this scheme is for Messrs. MacKenzie and Kennedy to convert the Church's apartments to condominiums and then to sell the condominiums for their own gain. (Complaint, ¶6) According to the Complaint, Messrs. MacKenzie and Kennedy have implemented this scheme through a pattern of racketeering activities consisting of extortion in violation of the Hobbs Act and mail and wire fraud. (Complaint, ¶¶ 117-118) The Complaint also alleges common law fraud. (Complaint, ¶¶ 170-178) These activities allegedly have enabled Messrs. MacKenzie and Kennedy to control the outcome of approximately four Church votes in February, May, September and October 2003, which resulted in their election to the Church's Board of Trustees and in their election to the Board of Directors of Bostonview, the Church's corporate arm and title holder to the apartment house. (Complaint, ¶¶ 3-5) Messrs. MacKenzie and Kennedy are now allegedly in a position to consummate the racketeering scheme by converting and selling the apartments for their own benefit. The Complaint, however, does not allege that they have actually attempted to convert and/or sell the

---

[1] As further grounds for this motion to dismiss, Messrs. MacKenzie and Kennedy incorporate herein by reference the arguments set forth in the companion memorandum of law submitted by co-defendants – the Church and Bostonview.

apartments. (Complaint, ¶6) Indeed, the Complaint (implicitly) acknowledges -- as it must -- that the Church and Bostonview continue, as always, to own the apartments and to receive all rental income. (Complaint, ¶6)

Plaintiff's RICO claims are based on the following alleged predicate acts: After allegedly misrepresenting their own and others' religious beliefs and intentions in order to gain membership in the Church (Complaint, ¶¶ 53, 65), Messrs. MacKenzie and Kennedy allegedly extorted, by their presence and lobbying efforts, the votes of certain elderly members of the Church. (Complaint, ¶¶ 76-80, 101) Messrs. MacKenzie and Kennedy also allegedly caused five letters to be sent through the mails, which accurately reported the results of these church votes and, in one letter, expressed the Church's objection to an unauthorized and unsolicited request for information submitted by the Massachusetts Association of the New Jerusalem (the "Association"), a group consisting of other Swedenborgian churches in Massachusetts. (Complaint, ¶¶ 97-99, 103)

Plaintiff's allegations fail to state a RICO claim. Plaintiff admits that the Church's apartments have not been converted or sold – the alleged purpose of Messrs. MacKenzie and Kennedy's "scheme." Plaintiff, therefore, has no standing to assert any RICO claims because he has not been injured as a result of the church votes and follow-up letters. See infra, pp. 5-7.

Plaintiff has not pled a "pattern" of racketeering activity that is necessary to bring a RICO claim as courts in this Circuit and elsewhere have consistently and decisively held that a single scheme to gain control of an organization in order to benefit from the control or disposition of its assets does not constitute a "pattern" of criminal activity. See infra, pp. 7-9.

Plaintiff also has not pled predicate acts of racketeering. Messrs. MacKenzie and Kennedy's presence and statements during Church votes can only be construed as ordinary politicking, and they used the mails to report truthfully the results of the Church votes. This is not the stuff of criminal racketeering. See *infra*, pp. 9-16.

Plaintiff has also not alleged sufficient facts to demonstrate that Messrs. MacKenzie and Kennedy proximately caused plaintiff's alleged harm. Plaintiff, for example, has not even alleged that the outcome of the votes at issue would have been different but for the alleged criminal "extortion." Finally, plaintiff's RICO claims fail because he has not met the requirements for a derivative action. See *infra*, pp. 16-17.

For these reasons, which are discussed more fully below, the Court should dismiss plaintiff's RICO claims. Because these are the only federal claims that have been asserted and there is no diversity jurisdiction, the Court should dismiss the Complaint in its entirety. See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998).

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(6), while applied sparingly, is not a "toothless tiger." Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). "Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery." Id. A plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). "Although all inferences must be made in the plaintiffs' favor, [a] court need not accept bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the

like." Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990).

The civil RICO statute carries with it a significant potential for abuse. See Doyle, 103 F.3d at 194; Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991); see also Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 924 (7th Cir. 1992). Careful scrutiny of the nature of the allegations and legal theories grounding a RICO complaint, therefore, is important, even more so when the RICO claim is the sole link to federal jurisdiction. See, e.g., Cayman Exploration Corp. v. United Gas Pipe Line, 873 F.2d 1356, 1363 (10th Cir. 1989). Accordingly, to survive a motion to dismiss, a civil RICO complaint must state particularized facts sufficient to demonstrate each element of the alleged predicate offense. Miranda, 948 F.2d at 44 (must "state facts sufficient to portray ... specific instances of racketeering activity within the reach of the RICO statute"); Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 948 (11th Cir. 1997) (must allege specific facts that, if true, would warrant conviction of alleged predicate offenses).

I.    Plaintiff Has No Standing to Bring RICO Claim Because Plaintiff Has Not Pled An Actual Injury.

Plaintiff's RICO claims are deficient as a matter of law where plaintiff has not pled any actual injury. To establish standing to assert a claim for violation of section 1962(b), (c) or (d), a plaintiff must show an actual injury to business or property by reason of the alleged RICO violation. See 18 U.S.C. §1964(c). See also Camelio v. American Federation, 137 F.3d 666, 670 (1st Cir. 1998); Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d 56, 91 (1st Cir. 1995). To establish "injury," there must be evidence of concrete financial loss. Steele v. Hospital Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994) (holding that, for RICO standing, the plaintiffs must prove a "concrete financial loss," an actual loss "of their own money," and

"not mere 'injury to a valuable intangible property interest'"); Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1310 (9th Cir. 1992); Fleischhauer v. Feltner, 879 F.2d 1290, 1299-1300 (6th Cir. 1989) (plaintiffs under section 1964(c) entitled to recover only for money they paid out as a result of racketeering activity), cert. denied, 493 U.S. 1074, 107 L. Ed. 2d 1029, 110 S. Ct. 1122 and 494 U.S. 1027 (1990)). Anticipated future losses are not sufficient to confer standing. Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990) (holding that "injury in the form of lost business commissions . . . is too speculative to confer standing, because Hecht only alleges that he would have lost commissions in the future, and not that he has lost any yet"). See also In Re: Taxable Municipal Bond Securities Litigation, 51 F.3d 518, 522 (5th Cir. 1995) (lost "opportunity" is too speculative to constitute a RICO injury).

Plaintiff, on behalf of himself, the Church and Bostonview, lacks standing here because it is acknowledged in the Complaint that the scheme to convert and sell the Church's apartments has not occurred. (Complaint, ¶ 6) In fact, as the Complaint acknowledges, nothing has changed with respect to the ownership or operation of the Church's apartments. (Complaint, ¶ 6) The apartments continue to be rented, and the Church continues to collect the rents. Plaintiff only alleges, without any stated basis, that Messrs. MacKenzie and Kennedy "intend" to convert and sell the apartments for their own personal gain. (Complaint, ¶ 6) That alleged fear of future harm, however, cannot be the basis for a RICO claim.

Accordingly, the Complaint should be dismissed for lack of subject matter

jurisdiction. Fed. R. Civ. P. 12(b)(1).[2]

  II.  Plaintiff Has Not Pled A "Pattern" of Racketeering Activity.

Plaintiff's RICO claims fail as a matter of law where plaintiff has not pled a "pattern" of racketeering activity, but instead only a single scheme to get control of the Church and its assets.

To assert a RICO claim, a plaintiff must allege that defendants have engaged in a "pattern" of racketeering activity that "amounts to or poses a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989). Courts typically will not find a RICO violation, even when there have been multiple predicate acts, where the predicate acts are part of a single scheme to win control of a particular organization or entity and where the predicate acts are directed at only a limited number of persons. See, e.g., GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 549 (4th Cir. 2001) (holding that "[w]here [multiple acts of] fraudulent conduct is part of the sale of a single enterprise and the fraud has a built in ending point, the case does not present the necessary threat of long-term, continued criminal activity" necessary to establish a pattern of racketeering); Vicom, Inc. v. Harbridge Merchant Serv., Inc., 20 F.3d 771, 782-83 (7th Cir. 1994) (finding no pattern where the defendants engaged in fraud against thousands of merchants but the fraud was designed to inflate the company's net worth so that defendants could profit from single scheme); Banks v. Wolk, 918 F.2d 418, 423 (3d Cir. 1990) (finding no pattern where the defendant engaged in fraud to affect the purchase price of a single

---

[2] For the reasons stated in co-defendants' memorandum of law, plaintiff also lacks standing to sue the Church because the Attorney General is vested with the exclusive authority to sue a public charity for alleged misuse of its assets or administrative improprieties. See Co-Defendants' Mem., at 15-17.

7

building).

In a case directly on point, the First Circuit affirmed the dismissal of a civil RICO suit in which one partner alleged that other partners, through multiple acts of alleged fraud, attempted to force him to relinquish his interest in the partnership's asset, a resort hotel in Puerto Rico. Efron v. Embassy Suites, Inc., 223 F.3d 13-14 (1st Cir. 2000). The First Circuit found that the multiple alleged predicate acts formed part of a single scheme by the other partners, during a relatively "modest" period (21 months), to obtain unrestricted control of the hotel. Id., at 19. The First Circuit held that plaintiff had failed to plead facts sufficient to show a "pattern" of racketeering and that his allegations "cannot be a RICO violation." Id., at 21.

This Court recently dismissed RICO claims in another virtually identical case, Giuliano v. Fulton, Civil Action No. 03-11293-REK (D. Mass. 2003)(Keeton, J.)(a copy of the Memorandum and Order is attached at Exhibit A). In Giuliano, the amended complaint "reveals only one alleged scheme focused on the single goal of wresting control of a single property from plaintiffs." Id., at 10. The Court found that "First Circuit precedent and precedent from several other circuits 'firmly rejects RICO liability where the alleged racketeering acts …, taken together, … comprise a single effort to facilitate a single financial endeavor.'" Id., at 11-12 (citing Efron, 223 F.2d at 19)(internal quotations omitted). This Court, accordingly, dismissed plaintiffs' complaint. Id., at 13.

The circumstances alleged in plaintiff's Complaint are indistinguishable from Efron, Giuliano, and the other above-referenced cases. In the very first sentence of the Complaint, Plaintiff summarizes the alleged racketeering scheme by stating that Messrs.

MacKenzie and Kennedy have allegedly engaged in a pattern of racketeering activity "to wrongfully take control of a one hundred eighty-five year old church to obtain dominion over its $30 million apartment house which now generates more than $1.2 million in annual income." (Complaint, ¶1) According to Plaintiff's allegations, the alleged predicate acts of racketeering were, taken together, part of a single design to obtain control over the Church's $30 million apartment house and its annual revenues. Based on precedent from the First Circuit and other circuits, this kind of single scheme to obtain control of an organization's property cannot be a violation of RICO. Therefore, Counts I-III should be dismissed.

      III.     <u>Plaintiff Has Not Pled Actionable Extortion</u>.

           A.     <u>Plaintiff Has No "Property" Right In The Procedure Of The Church Elections</u>.

Hobbs Act extortion is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." 18 U.S.C. §1951(b)(2). To claim Hobbs Act extortion, a person must have a property right of which he has been wrongfully deprived. Even assuming that Messrs. MacKenzie and Kennedy lobbied the elderly church members as alleged in the Complaint, neither plaintiff nor any of the other church members has a property right to church elections that are free from lobbying and electoral pressure or that meet any particular procedural safeguards. <u>Cf</u>. <u>Pappas v. Passias</u>, 887 F. Supp. 465, 468, 472 (E.D. Pa. 1995) (where plaintiff church member brought RICO claim against church officials, in part, for canceling church election thereby preventing plaintiff from obtaining church office, court held plaintiff lacked claim for individual harm and therefore lacked standing). In fact, after a nationwide review for relevant case law, defendants have not found a single case

suggesting a protected property right in church election procedure.[3]

The only private organization whose members do have a property right to free and fair elections appear to be labor unions. United States v. Local 560, 780 F.2d 267, 281-282 (3rd Cir. 1985) ("the membership's intangible property right to democratic participation in the affairs of their union is properly considered extortable 'property' for purposes of the Hobbs Act"). The union election, however, is distinguishable from elections involving churches and other charitable organizations. As the Third Circuit noted,

> The right to membership in a union is empty if the corresponding right to an election guaranteed with equal solemnity in the fundamental law of the union is denied. If a member has a "property right" in his position on the roster, ... he has an equally <u>enforceable property right in the election of men who will represent him in dealing with his economic security</u> and collective bargaining <u>where that right exists by virtue of express contract</u> in the language of a union constitution.

United States v. Local 560, 780 F.2d 267, 281 (3rd Cir. 1985)(internal quotations and citations omitted)(emphasis added). Thus, union elections involve protected property interests because union leaders are responsible by contract for protecting the economic security of the union's members. The same is not the case with churches, which bear no contractual obligation to members to protect their economic security.

Moreover, in determining whether "property" as defined in the Hobbs Act includes a right to free and fair church elections, the rule of lenity should be considered. That rule of statutory construction provides that criminal statutes should be given a

---

[3] There is not even a protected property in the election procedure for certain government offices. See Wilson v. Scruggs, 1999 U.S. Dist. LEXIS 2607, *16-17 (N.D. Miss. 1999) (where police chief position was converted from elective position to appointive position, court held that individual seeking the position had no constitutionally protected property interest in "election procedure" and, therefore, no standing to object to the change).

narrow interpretation in the absence of Congressional direction. See Scheidler v. National Organization for Women, Inc., 537 U.S. 393, 409 (2003) (citing McNally v. United States 483 U.S. 350, 359-360 (1987)). It is implausible that Congress, in enacting the Hobbs Act, intended to include free and fair church elections as "property" to be protected by criminal law. Any other conclusion would lead to the absurd result that one could be exposed to serious criminal charges merely for participation and politicking in the internal elections of a church or other charitable organization.

        B.      Plaintiff Has Not Pled Sufficient Facts To Establish A Prima Facie Case Of Hobbs Act Extortion.

Even if plaintiff had a right to certain procedural safeguards in the Church's voting procedures, plaintiff has not pled sufficient facts to establish a *prima facie* case of Hobbs Act extortion. Plaintiff does not allege that Messrs. MacKenzie or Kennedy used or threatened to use "force" or "violence" in allegedly coercing the votes of the elderly members of the Church. Rather, plaintiff alleges only that Messrs. MacKenzie and Kennedy put the elderly members of the Church in "fear" by telling them that they would lose Church "benefits" if they did not support Messrs. MacKenzie and Kennedy in the votes. (Complaint, ¶ 77) This allegation fails to state a claim for extortion.

The Complaint does not allege - - nor could it - - that any member of the Church had any legal right to receive Church "benefits," or that any member had any property rights at issue here whatsoever. Indeed, as a public charity, plaintiff would be hard pressed to allege that the Church guaranteed any entitlement to "benefits" for its members. Given this reality, the term "benefits" can be read only to suggest that the items being provided by the Church (which plaintiff does not identify) to which Messrs. Mackenzie and Kennedy referred during the voting process, were being provided on

some discretionary basis. If the elderly members had no legally enforceable property right to these benefits, then Messrs. MacKenzie and Kennedy cannot be charged with extortion. In any event, because the Complaint fails to plead what "benefit" any member supposedly had a property interest in and because the Church is a public charity, the RICO extortion claim is defective on its face.

Moreover, the allegation that Messrs. MacKenzie and Kennedy made a statement concerning possible negative consequences for not supporting them in the election and other votes surely could never be the basis for extortion. All political campaigning is replete with promises that good consequences (or "benefits") will flow from supporting a candidate or ballot measure and conversely that bad consequences (or loss of "benefits") will flow from supporting the opposing candidate or measure. Even when all reasonable inferences are made in plaintiff's favor, plaintiff's claim of extortion is based solely on Messrs. MacKenzie and Kennedy engaging in such standard politicking. This cannot be the basis for a charge of criminal extortion, and the RICO claims, to the extent grounded in alleged extortion, fail as a matter of law.

IV.    Plaintiff Has Not Pled Actionable Mail Fraud.

Plaintiff's mail fraud claim is deficient as a matter of law because the five letters at issue do not further the alleged racketeering scheme (to gain control of the Church's property), but merely report the occurrence of certain votes at the Church and decisions made by the Church as to its relationship with other Swedenborgian churches in Massachusetts.

To prove mail fraud, plaintiff must allege and adduce evidence of (1) a scheme to defraud; (2) the defendants' knowing and purposeful participation in the scheme,

intending to defraud; and (3) the use of the mails in furtherance of the scheme. Bonilla v. Volvo Corp., 150 F.3d 62, 66 (1st Cir. 1998); United States v. Cassiere, 4 F.3d 1006, 1011 (1st Cir. 1993); McEvoy v. Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 790 (1st Cir. 1990). A court must carefully "scrutinize" RICO claims premised on mail fraud "because of the relative ease with which a plaintiff may mold a RICO pattern" from flimsy allegations of mail fraud. Efron v. Embassy Suites, Inc., 223 F.3d 20 (1st Cir. 2000)(citing cases) Here, plaintiff can neither allege nor prove that the mailings referenced in the Complaint were used in the furtherance of any unlawful scheme, and thus the RICO claims fail to the extent they are premised on alleged mail fraud.

Plaintiff identifies five letters which he contends constitute independent acts of mail fraud. (Complaint, ¶ 118) The first letter, dated September 23, 2003 was written by Edwards & Angell LLP, as counsel to the Church, giving accurate notice of the election of new directors of Bostonview. (Complaint, ¶ 118) The second and third letters were again written by Edwards & Angell LLP, both dated September 29, 2003 and were addressed to the Association. The first September 29th letter responded to the Association's request for detailed information concerning the Church. Edwards & Angell LLP's letter requested certain follow up information from the Association and stated that the trustees of the Church would consider the request for information. (Complaint, Ex. M) The other September 29th letter correctly informed the Association that two members from the Church had been removed from membership. (Complaint, Ex. N) The final two alleged "mail fraud" documents are substantially similar, both dated October 26, 2003, and were sent by the Church to the Association, the Massachusetts New Church Union ("Union") and The Swendenborgian Church of the United States ("the

Convention"). (Complaint, Ex. O) The letters attach a resolution signed by all fifteen trustees and/or Church council members withdrawing from the Convention, the Association and the Union. (Complaint, Ex. N, Ex. O) Plaintiffs do not allege that there is a single false statement in any of these documents.

None of the letters provides an actionable basis for a RICO claim predicated on mail fraud because none was mailed in furtherance of any scheme to defraud plaintiff and the Complaint cannot so allege. For a mailing to be considered 'in furtherance of the scheme,' "the scheme's completion or the prevention of its detection must have depended in some way on the mailings." U.S. v. Pacheco-Ortiz, 889 F.2d 301, 305 (1st Cir. 1989), quoting U.S. v. Silvano, 812 F.2d 754, 760 (1st Cir. 1987) (internal quotation marks omitted.) In addition, the mailing must be incident to some important and essential step in the execution of the scheme. Schmuck v. United States, 489 U.S. 705, 710-711 (1989); United States v. Tackett, 646 F.2d 1240, 1244 (8th Cir. 1981) ("the statute does not reach all mailings resulting from a fraudulent scheme, but only those which are in furtherance of the scheme"). McEvoy Travel Bureau, 904 F.2d at 792 n.10 (citing Tackett with approval).

Here, the letters referenced in the Complaint merely reported voting results and, in one instance, the Church's refusal to agree to an audit which it deemed unwarranted and unnecessary. Neither the reporting of voting results nor the Church's audit response letter could have furthered the scheme as alleged in the Complaint in the slightest. If anything, the mailings had the effect of notifying plaintiff again of the alleged unlawful scheme already completed (Mr. Chapin was already aware of the votes), which then prompted this lawsuit. See, e.g., United States v. Bonansinga, 773 F.2d 166, 172 (7th Cir.

1985), cert. denied, 476 U.S. 1160 (1986) (a mailing that is not in furtherance of the fraud, but instead works against it will not support a claim of mail fraud.)

In addition, as alleged by plaintiff, the mailings constitute at most – assuming *arguendo* the existence of a fraudulent scheme – only "post-fraud" accounting, which does not violate RICO. System Mgmt., Inc. v. Loiselle, 138 F. Supp. 2d 78, 93 (D. Mass. 2001) (mailings are "not part of the fraudulent scheme when they serve as little more than vehicles for post-fraud accounting among victims") , rev'd on other grounds, 303 F.3d 100 (1st Cir. 2002). See also United States v. Maze, 414 U.S. 395, 402-403 (1974) (holding mailing of sales slips from vendor to bank occurred after fruition of scheme to defraud and was counterproductive to essence of defendant's scheme to charge purchases to stolen credit card); Parr v. United States, 363 U.S. 370, 393 (1960) (finding that where defendants obtained gasoline and other products for personal use by using school district credit card, invoices sent from gas company to school was not chargeable because gas company's bill collection procedure was "immaterial" to defendants' scheme); Kann v. United States, 323 U.S. 88, 95 (1944) (finding defendants' scheme reached fruition once fraudulently obtained checks were honored; mailings that were part of further processing not chargeable); United States v. Waymer, 55 F.3d 564, 570 (2nd Cir. 1995) ("if a defendant has been able to take possession of the object of the fraud and if the fraud is then at an end, further mailings involve little more than post-fraud accounting among the potential victims of the various schemes" and do not implicate the mail fraud statute) (internal citation omitted).

With respect to the three letters from the Church's lawyers at Edwards & Angell LLP, the Court should also dispose of the mail fraud claims where courts have repeatedly

15

held that attorney correspondence that conveys facts and legal positions in a dispute cannot constitute mail fraud. McMurtry v. Brasfield, 654 F. Supp. 1222, 1226 (E.D. Va. 1987)(letters and affidavit sent through mail concerning dispute cannot fall within mail fraud statute; "[s]uch an interpretation would chill the ability of attorneys to adequately and zealously represent their client's interest in pending litigation"); Spiegel v. Continental Illinois Nat. Bank, 609 F. Supp. 1083, 1089 (N.D. Ill. 1985)(same), aff'd, 790 F.2d 638 (1986), cert. denied, 479 U.S. 987 (1986); Paul S. Mullin & Associates, Inc. v. Bassett, 632 F. Supp. 532, 540 (D. Del. 1986)(plaintiffs' contention that lawyer position statements can constitute mail fraud "absurd").

Therefore, because plaintiff has not alleged that any of the five letters furthered the RICO scheme, because the letters constituted at most "post-fraud" accounting, and because some of the letters merely conveyed facts and legal positions by the Church's attorneys, plaintiff has failed to state a cause of action for mail fraud. The RICO claims, to the extent they are premised on mail fraud, should be dismissed.

    V.    Plaintiff Has Not Pled A Causal Nexus Between The Alleged Racketeering Activity And Any Alleged Harm.

A plaintiff also must allege in the Complaint that plaintiff's injuries were caused by the predicate acts of racketeering. See Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 266-68 & n.12, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992) (to state a RICO claim, plaintiff must show injury proximately caused by racketeering activity); Bonilla v. Volvo Car Corp., 150 F.3d 62, 66-67 (1st Cir. 1998) (RICO requires plaintiffs to show that they were "injured in [their] business or property by reason of" the racketeering activity); Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44, 47 (1st Cir. 1991) (to avert dismissal under Rule 12(b)(6), civil RICO complaint must state facts showing "a causal

nexus between [racketeering activity] and the harm alleged"; the "injury itself" must be "the result of a predicate act").

Here, plaintiff fails to allege any injury that was proximately caused by Messrs. MacKenzie and Kennedy's actions during the church votes, nor by the mailing of any of the five letters at issue. For example, plaintiff has not even alleged that the purportedly extorted votes of the Church's elderly members made any difference in the results of the voting. Viewing the allegations of the Complaint in the light most favorable to plaintiff, it is possible that the votes would have turned out just the same even without the support of the Church's elderly members. Without plaintiff alleging the requisite causal nexus between the purported racketeering activity and the purported harm, the RICO claims should be dismissed.

### VI. Plaintiff Has Not Properly Pled A Derivative Claim.

Plaintiff's RICO claims should be dismissed for the additional reason that Plaintiff has not verified the Complaint, as required by Fed. R. Civ. P. 23.1. See Abeloff v. Bates, 119 F.R.D. 332, 334 (D. Mass. 1988) (derivative claim to be dismissed without verification of complaint).

### VII. Upon Dismissal Of The RICO Claims, The Court Should Dismiss The Remaining State Law Claims For Lack Of Jurisdiction.

If this Court dismisses the RICO claims, the Court should exercise its discretion to dismiss the remainder of the Complaint because it consists only of state law claims and there is no diversity of citizenship.

Although this Court would have supplemental jurisdiction, the First Circuit has held that where a court dismisses the federal claims on which jurisdiction was originally based, "it must exercise its discretion in determining whether to retain jurisdiction over

the remaining state claims." See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998). See also Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996). For reasons of comity, courts have held that it is "strongly favored" for a court to dismiss state claims once the federal claims have been dismissed. Camelio, 137 F.3d at 672. See Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

> As the Supreme Court stated:
>
> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well.

See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

The First Circuit's decision in Camelio is directly on point. In that case, the district court dismissed plaintiff's RICO claims, which were the sole original basis for federal jurisdiction. Camelio, 137 F.3d at 672. The district court retained jurisdiction over some of the remaining state law claims, dismissed them for failure to state a claim and remanded the remainder of the state claims to state court. Id. The First Circuit affirmed the dismissal of the RICO claims, but reversed the district court's decision to retain jurisdiction over any of the state law claims. Id. at 672-673.

Based on this clear precedent, if the Court dismisses the RICO claims, it should dismiss the remainder of the Complaint.[4]

## CONCLUSION

For these reasons, and for the reasons stated in the companion motion to dismiss filed by the Church and Bostonview, which is incorporated herein by reference, defendants Edward MacKenzie and Thomas Kennedy respectfully request that the Court dismiss Counts I-III of the Complaint and dismiss the remaining state law claims for lack of jurisdiction.

---

[4] In the event the Court retains some jurisdiction of this matter, the Court should dismiss the state law claims against Messrs. MacKenzie and Kennedy because of their clear deficiencies. For example, plaintiffs' M.G.L. c. 93A claim (Count IX) is defective as a matter of law because this statute does not apply to disputes within an organization. Szalla v. Locke, 421 Mass. 448, 452 (1995). A chapter 93A claim requires "a commercial transaction between a person engaged in trade or commerce with another person engaged in trade or commerce." Id. Hence, courts have repeatedly held that a plaintiff cannot bring a chapter 93A claim where it does not arise from a commercial relationship. See, e.g., Zimmerman v. Bogoff, 402 Mass. 650, 662 (1988) (no 93A claim where dispute between parties to joint venture and fellow shareholders in closed corporation); Riseman v. Orion Research Inc., 394 Mass. 311, 313-14 (1985) (no 93A claim where dispute between stockholder and corporation regarding internal governance of corporation); Manning v. Zuckerman, 388 Mass. 8, 14 (1983) (no 93A claim where dispute between employer and employee); Newton v. Moffie, 13 Mass. App. Ct. 462, 468 n.7 (1982) (no 93A claim where dispute between partners). The dispute in the instant case does not involve trade or commerce between independent entities. Rather, it involves a dispute between members of the same religious organization, the Church, and (formerly) affiliated religious organizations, relating to the internal governance of the Church. Thus, plaintiffs have not pled a cause of action for violation of chapter 93A, and Count IX should be dismissed.

Count VIII, which asserts a common law fraud claim against Messrs. MacKenzie and Kennedy, is also deficient as a matter of law. Plaintiffs allege that MacKenzie committed fraud by misrepresenting his religious beliefs and that MacKenzie and Kennedy misrepresented the religious beliefs of their relatives and family members so that they could join the Church. (Complaint, ¶¶53, 65, ) Plaintiffs allege that these individuals do not actually believe in or intend to follow Swedenborgian principles of faith. (Complaint, ¶¶ 53, 66) Courts have held, however, that the profession of religious faith is protected by the Free Exercise Clause of the First Amendment and cannot be the basis for a fraud claim. United States v. Ballard, 322 U.S. 78, 86-87 (1944) (holding that neither the nature of one's religion, nor whether one believes in good faith in that religion, can be the basis for a fraud claim); Van Schaick v. Church of Scientology of California, Inc., 535 F. Supp. 1125, (D. Mass. 1982) (citing Ballard, court stated that "the truth or falsity of religious beliefs were beyond the proper scope of judicial inquiry"). Accordingly, plaintiffs' common law fraud claims should be dismissed for failure to state a claim.

The common law fraud claims should also be dismissed because the alleged fraud has not been pled with sufficient particularity. See Mass. R. Civ. P. 9(b). In particular, plaintiffs have not specified, as is required, the allegedly fraudulent statements, where and when the statements were made, or the basis for the claim that the statements were fraudulent. See United States v. Franklin, 147 F. Supp. 2d 39, 46 (D. Mass. 2001); In re The Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 36, 44 (D. Mass. 2003).

## REQUEST FOR HEARING

Defendants request an opportunity for oral argument on this motion.

                                    Respectfully submitted,

                                    Defendants
                                    EDWARD MACKENZIE and
                                    THOMAS KENNEDY,
                                    By their attorneys,

                                    _____
                                    Howard M. Cooper (BBO #543842)
                                    Nicholas B. Carter (BBO #552574)
                                    Todd & Weld LLP
                                    28 State Street, 31st Floor
                                    Boston, MA 02109
                                    (617) 720-2626

Dated: March 22, 2004

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 3/22/04.

_____