UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE GENERAL CONVENTION OF THE
NEW JERUSALEM IN THE UNITED
STATES OF AMERICA, INC., THE
MASSACHUSETTS ASSOCIATION OF
THE NEW JERUSALEM
(SWEDENBORGIAN), and GEORGE
CHAPIN,

        Plaintiffs,

v.

EDWARD MACKENZIE, THOMAS
KENNEDY, BOSTON SOCIETY OF THE
NEW JERUSALEM, INCORPORATED
(SWEDENBORGIAN), and BOSTONVIEW
CORPORATION

        Defendants.

C.A. No. 04-10419-WGY

**DEFENDANTS BOSTON SOCIETY OF THE NEW JERUSALEM, INC.
AND BOSTONVIEW CORPORATION'S MEMORANDUM OF
LAW IN SUPPORT OF MOTION TO DISMISS**

## I.    PRELIMINARY STATEMENT

This memorandum is respectfully submitted in support of Defendants Boston Society of

the New Jerusalem, Inc. (the "Church") and Bostonview Corporation's ("Bostonview") Motion

to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

This is an action brought by George Chapin ("Chapin"), a single disaffected member of

the Church, and by two voluntary associations comprised of some, but not all, churches that

follow the principles and teachings of Emanuel Swedenborg. The allegations in the Complaint

focus entirely on how Church assets have been used, or might be used, and Chapin's dismay

about the new members who have joined the Church beginning in 2002.

But for the inclusion of a RICO (18 U.S.C. § 1962) claim against Defendants Edward MacKenzie ("MacKenzie") and Thomas Kennedy ("Kennedy") (collectively, the "Individual Defendants"), there would be no basis for the filing of this action in federal court.  The Complaint should be dismissed because the plaintiffs have not stated a valid RICO claim, so there is no basis for the exercise of federal jurisdiction.  Even if they had done so, this court, as a matter of mandatory abstention or in the sound exercise of its discretion, should not decide in the two claims against the Church and Bostonview, which are state court claims under the exclusive purview of the Attorney General for the Commonwealth of Massachusetts (the "Attorney General").

Despite the tone of the Complaint and its *ad hominem* assertions as to the Individual Defendants, the claims asserted against the Church and Bostonview, which owns an apartment building in which the Church is located (the "Church Property"), are limited to two equitable claims for declaratory relief, one of which pertains to the Church Property, and the second of which pertains to members of the Church other than Chapin.  These are not claims that can or should be decided by the federal court, nor do any of the plaintiffs have standing to assert them.  As a public charity, the operation of the Church and its property are subject to the exclusive oversight of the Attorney General who has, in fact, commenced a proceeding which covers the subject matter of the Complaint.

For the reasons set forth below and in the Individual Defendants' motion to dismiss, which is incorporated herein by reference, the Complaint should be dismissed.[1]

---

[1]    Pursuant to Fed. R. Civ. P. 12(b)(6), a claim should be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Gorski v. New Hampshire Dep't of Corr., 290 F.3d 466, 473 (1st Cir. 2002).  In reviewing a motion to dismiss for failure to state a claim the allegations of the complaint are taken as true, drawing all reasonable inferences favorable to the plaintiff. Barrington Cove Ltd. P'ship. v. Rhode Island Hous. and Mortgage Fin. Corp., 246 F.3d 1, 4 – 5 (1st Cir. 2001); Knight v. Mills, 836 F.2d 659 (1st Cir. 1987).  Although the averments in a complaint are construed liberally, courts give no credit to bald assertions, subjective characterizations, or "outright vituperation." See e.g., Barrington Cove, 246 F.3d at 4 – 5; Rogan v. Menino, 175 F.3d 75, 77 (1999).

## II.    STATEMENT OF FACTS

### A.    The Plaintiffs

This action has three plaintiffs, none of whom asserts a present or direct claim against the Church.  One of these plaintiffs is the Massachusetts Association of the New Jerusalem (Swedenborgian) (the "Association") which is alleged to be comprised of five active churches.  One of those churches was -- but no longer is -- the Church.  (Complaint, ¶ 10.)  The Church left the Association in 2003.  (Id., ¶ 33.)  The Association provides funds for the Massachusetts New Church Union ("Union"), which purportedly has grievances against Kennedy and MacKenzie.  (Id., ¶¶ 36-50.)  This is the sum total of the Complaint's allegations as to the Association.  Chapin is a member of the Church.  (Id., ¶11.)  He has made no effort to secure action by the Trustees of the Church and of the directors of Bostonview of the type requested in the Complaint.  (Id., ¶ 157.)  Finally, the Convention is an association of churches that follow the principles and teachings of Emanuel Swedenborg.  (Id., ¶ 9.)

### B.    No Facts As To Dissolution

In October 2003, the Church voted to withdraw from the Convention, and so notified the Convention.  (Id., ¶¶ 102-103.)  Since that time, the Church has continued to exist.  It has officers who include a President, Vice President, Secretary and Treasurer.  The Church also has a Board of Trustees and a Church Council.  (Id., ¶¶ 23-25.)

The Church By-Laws, as they existed in October 2003, contained the following provision:

> Section 3.        Dissolution.
>
> In the event that the religious body known as the Boston Society of the New Jerusalem, Inc. shall cease to exist, all funds and holdings shall be transferred to the General Convention of the New Jerusalem in the United States of America.  These assets shall be held in escrow for the establishment of another General Convention of the New

BOS_438486_1/RMCCARTHY

> Jerusalem (Swedenborgian) Church within the City of
> Boston, Massachusetts.  After a period of twenty (20)
> years, should no such Church exist, the capital and income
> therefrom shall revert to the General Convention of the
> New Jerusalem (Swedenborgian) with any restrictions of
> uses which may have been voted by the Society members at
> the time of dissolution.

Id., ¶ 53, Exhibit C.  The Church has since amended its By-Laws to remove this provision.  Id., ¶ 105.  There is no allegation that the Church has dissolved or ceased to exist, or that dissolution proceedings have been commenced pursuant to Mass. Gen. L. ch. 180, § 11A.

   **C.**     **Membership.**

   The Church By-Laws as they existed in October 2003, also contained certain provisions with respect to membership.  Article IV, Section 1, of the By-Laws describes the procedure for applying for membership and being accepted as a Church member as follows:  that the application be made in writing to the Pastor or to the Secretary of the Church Council; that the application be presented at a meeting of the Church Council which shall recommend acceptance at a general or special meeting of the Church members;  that acceptance for Church membership requires a two-thirds vote of members present at the meeting; and that new members then sign the Church membership book.  (Complaint, Exhibit C, Article IV.)

   In a separate provision, Article IV, Section C, of the By-Laws states that all candidates for membership shall participate in sessions of doctrinal study leading to confirmation under the guidance of the Pastor.  (Id.)  There is no requirement in the By-Laws that an applicant for membership be confirmed before being accepted for Church membership.  Despite the absence of any requirement in the By-Laws that confirmation must occur before acceptance as a member of the Church, the Complaint asserts that memberships of those who joined the Church in 2002 and 2003 are void and without effect because those members had not been confirmed before joining the Church.  (Id., ¶¶ 69-73, 149-153.)

### III.    ARGUMENT

**A.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE COMPLAINT IF, AS THEY SHOULD BE, THE RICO CLAIMS ARE DISMISSED.**

Plaintiffs' RICO claims provide the only basis for federal jurisdiction over this action, and none of those claims (Counts I through III) are asserted against the Church or Bostonview. For the reasons stated in the motion to dismiss filed by the Individual Defendants, the RICO counts fail to state a claim upon which relief can be granted.  If the RICO claims against the Individual Defendants are dismissed, the complaint against the Church and Bostonview should also be dismissed because the RICO claims are the sole basis for federal jurisdiction.  See e.g., Camelio v. American Federation, 137 F.3d 666, 672 – 73 (1st Cir. 1998) (vacating district court's decision to retain supplemental jurisdiction over employee's state law claims related to alleged wrongful discharge and ordering the state claims remanded to state court, because the court had dismissed the federal RICO claim upon which jurisdiction was based).

**B.    EVEN IF THERE WERE SUBJECT MATTER JURISDICTION OVER THE COMPLAINT, THIS COURT SHOULD NOT EXERCISE THAT JURISDICTION.**

This action raises issues concerning the use of Church assets, the Church's management of its affairs, and the purported dissolution of the Church.  There can be no dispute that the Church is a public charity.  See page 13, infra.  As such, the Attorney General has the exclusive power to investigate and enforce the proper application of Church funds and to prevent breaches of trust in the Church's administration.  Mass. Gen. L. ch. 12, §§ 8, 8G, 8I.  In fact, such an action by the Attorney General is pending in Suffolk Superior Court, Civil Action No. 03-5408A (the "Suffolk Superior Court Action").[2]  With respect to dissolution, the Supreme Judicial Court

---

[2]    Annexed as Exhibit A hereto is a copy of the Civil Investigative Demand (the "CID") which commenced the Suffolk Superior Court Action in November 2003.

BOS_438486_1/RMCCARTHY

has exclusive jurisdiction over any application for dissolution and subsequent "administration of its funds for such similar public charitable purposes as the court may determine."  Mass. Gen. L. ch. 180, § 11A.  The Attorney General is a necessary party to any such proceeding.  See id. ch. 12, §§ 8 and 8G.

As a matter of federalism and comity, this Court should abstain from entertaining the state law claims because those claims (1) are the subject of a pending state proceeding, and (2) involve matters as to which Massachusetts has established a comprehensive system of regulation. See Trainor v. Hernandez, 431 U.S. 434, 443 – 44 (1977); Worldwide Church of God, Inc. v. State of California, 623 F.2d 613 (9th Cir. 1980).  Alternatively, this Court should in its discretion decline jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

1.    **The Court Should Abstain From Entertaining State Law Claims Which Are Subject to The Exclusive Oversight Of The Attorney General and the Supreme Judicial Court.**

The Court should abstain from exercising any jurisdiction it may have over this action because the matters covered by the Complaint are the subject of a pending state civil proceeding; namely, the Suffolk Superior Court Action.  Through that civil action the Attorney General has received comprehensive information concerning the assets and governance of the Church and Bostonview, the Church's members, and the Church's conduct of its financial affairs.  The Attorney General has the sole authority to initiate whatever further and other action he may deem appropriate.

(a)    **Younger Abstention**

The Suffolk Superior Court Action is a civil proceeding brought by the Commonwealth covering the matters raised in this action.  Where the matters at issue are the subject of pending state civil proceeding in which the state is a party, the federal court should abstain and dismiss the complaint.  Trainor v. Hernandez, 431 U.S. 434 (1977) (extending abstention doctrine of

Younger v. Harris, 401 U.S. 37 (1971), from pending criminal proceedings to civil investigative and enforcement actions); Worldwide Church of God, Inc. v. State of California, 623 F.2d 613 (9th Cir.1980) (holding abstention was appropriate where state attorney general brought action against church regarding misappropriation of finances).

In Worldwide Church, the state attorney general, pursuant to its supervisory authority over public charities, had filed an action in state court against a church and affiliated corporations alleging the misappropriation of church funds.  Worldwide Church, 623 F.2d at 614.  The church then filed an action in federal court to enjoin the attorney general's enforcement.  Id. at 615.  The district court abstained from hearing the case and the Ninth Circuit affirmed, reasoning that the state interest in controlling charitable assets was sufficient to require abstention.  Id. at 615-16.

Here, as in Worldwide Church, the Attorney General brought the Suffolk Superior Court Action pursuant to its exclusive supervisory authority over public charities.  As in Worldwide Church, this court should abstain from hearing this case because the Suffolk Superior Court Action is a pending proceeding regarding matters in which the state has a substantial interest.  See also Trainor, 431 U.S. at 435-36, 444 (abstaining where state had filed a state court action seeking to recover fraudulent welfare payments, implicating on important state interest).  This Court should likewise abstain from hearing this action so as not to interfere with the ongoing enforcement action by the Commonwealth of Massachusetts in its sovereign capacity.  See id. at 445 – 47.

**(b)    Burford Abstention**

The operation and dissolution of charitable corporations are subject to a comprehensive state regulatory scheme in Massachusetts.  The Attorney General brought the Suffolk Superior Court Action within this framework to address the questions that are the subject matter of the

Complaint in this federal action.

The declaratory relief sought involving the purported dissolution of the Church would interfere with the state statutory framework governing charitable corporations, which grants all such authority to the Supreme Judicial Court, with the Attorney General as a necessary participant.  Mass. Gen. L. ch. 180, § 11A; ch. 12, §§ 8 and 8G.  Where, as here, the matters at issue are comprehensively addressed by a state statutory and regulatory scheme, the federal court should abstain and dismiss the complaint.  Burford v. Sun Oil Co., 319 U.S. 315, 332 – 33 (1943).  See also American Tel. & Tel. Co. v. IMR Capital Corp., 888 F. Supp. 221, 242 (D. Mass. 1998) (citing Construction Aggregates Corp. v. Rivera de Vicenty, 573 F.2d 86, 92 (1st Cir. 1978)).

Courts abstain from hearing a case to avoid disrupting a state's coherent policy in an area of comprehensive state regulation.  See Friedman v. Revenue Management of New York, Inc., 38 F.3d 668, 671 – 72 (2d Cir. 1994); Construction Aggregates, 573 F.2d at 92.  For example, in Friedman, the Second Circuit upheld the district court's dismissal on abstention grounds of an action seeking dissolution of a corporation amid allegations of fraud and RICO violations.  The court held that abstention was appropriate to "avoid needless interference with New York's regulatory scheme governing its corporations."  Friedman, 38 F.3d at 671.

Similarly, Massachusetts has established a comprehensive statutory scheme for overseeing the creation, dissolution, and internal management of the public charitable corporations established under its laws.[3]  Pursuant to its statutory authority, the Attorney General has promulgated rules and regulations pertaining to the operation of public charities.  See 940

---

[3] This statutory scheme includes, among others, provisions for: the establishment of a "Public Charities Division" within the Office of Attorney General (Mass. Gen. L. ch. 12 § 8B); the requirements, enforcement and penalties related to filing of information (Mass. Gen. L. ch. 12 § 8E); annual reporting (Mass. Gen. L. ch. 12 § 8F); investigations by the Attorney General (Mass. Gen. L. ch. 12 § 8H); and the promulgation of rules and regulations pertaining to public charities (Mass. Gen. L. ch. 12 § 8J).

C.M.R. § 2.00 et seq.  The Attorney General has the exclusive responsibility under state law to take enforcement action to protect interests in public charities.  See Mass. Gen. L. ch. 12, § 8; Weaver v. Wood, 425 Mass. 270, 275, 680 N.E. 2d 918, 922 (1997).  The statutory scheme also confers jurisdiction on the Massachusetts trial courts over enforcement and investigatory actions. See Mass. Gen. L. ch. 12, §§ 8E, 8F.  If a charitable corporation were to seek dissolution, the Supreme Judicial Court (with the Attorney General as a necessary party to the proceeding) would have the exclusive authority to allow that dissolution.  Id. ch. 180, § 11A; ch. 12, §§ 8, 8G.

As in Friedman, this Court should abstain from hearing these claims because Massachusetts has a strong interest in regulating the administration and dissolution of its charitable corporations, and has a comprehensive scheme by which it does so.

### 2.    The Court Should Decline To Exercise Jurisdiction Pursuant To 28 U.S.C. § 1367(c).

If the Court does not conclude that the Complaint fails to state a RICO claim, the only possible basis for jurisdiction over the state law claims asserted against the Church and Bostonview would be the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court should decline to exercise such jurisdiction because the state law claims against the Church and Bostonview predominate over the RICO claims against the Individual Defendants; the state law claims implicate important and comprehensive state law issues; and the claims in this case concern a public charity, over which the Attorney General, not the Plaintiffs, has exclusive responsibility to regulate and enforce proper conduct.

Under Section 1367, enacted in 1990,[4] so-called pendent party jurisdiction is addressed under the umbrella of supplemental jurisdiction, as follows:

> [I]n any civil action of which the district courts have original
> jurisdiction, the district courts shall have supplemental jurisdiction

---

[4] Section 1367 was part of the Judicial Improvements Act of 1990 (Pub.L. 101-650).

over all other claims that are so related to claims in the action
within such original jurisdiction that they form part of the same
case or controversy under Article III of the United States
Constitution. Such supplemental jurisdiction shall include claims
that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). However, Section 1367 provides that a court may nonetheless decline to

exercise such supplemental jurisdiction if

1. the claim raises a novel or complex issue of State law,
2. the claim substantially predominates over the claim or claims over which
   the district court has original jurisdiction,
3. the district court has dismissed all claims over which it has original
   jurisdiction, or
4. in exceptional circumstances, there are other compelling reasons for
   declining jurisdiction.

Id. § 1367(c).

The district court has "considerable authority whether or not to exercise this power" over

pendent claims "[i]n light of considerations of judicial economy, convenience, fairness to

litigants, and comity." Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991). Even where the

evidentiary issues between a RICO claim and state law claims overlap, courts may decline

jurisdiction if the state claims raise unique and distinct issues. Brayall v. Dart Indus., 1988 WL

72766, *4 (D. Mass. Feb. 3, 1988), aff'd, 989 F.2d 484 (1st Cir. 1993).[5]

In Brayall, the court, after determining that it would be permissible to exercise

jurisdiction over state law claims, decided in its discretion not to hear the claims because they

presented state law issues and because judicial efficiency was better served by severing the state

law claims. Id. at *4 – *6. As in this case, the RICO claims in Brayall were brought against

some, but not all of the parties. The court noted that the complaint contained "at least eight

theories of liability, only one of which is based on federal law." Id. Moreover, because some of

the state claims presented uncertain issues of state law, the court concluded that "[c]onsiderations

---

[5] A copy of the Brayall decision is attached for the Court's convenience as Exhibit B.

of comity and clarity indicate that such questions ought to be decided by the courts of the Commonwealth." Id. at *5.  In particular, the court noted that the question of whether the defendants' conduct "constitutes an unfair business practice under Mass.Gen.L ch. 93A 'is a definitional problem of longstanding.'" Id.  Although the court was competent to adjudicate such a claim, it declined to do so along with the other state claims because "a 'surer-footed reading of the applicable law' may be obtained if the question [of conduct under Chapter 93A] is decided initially by a state court with the possibility of appeal to, and authoritative decision, by the Supreme Judicial Court of Massachusetts." Id. (quoting Gibbs, 383 U.S. at 727).  Reasoning that the case was "a classic state law case to which a federal claim [was] appended," the court relinquished its jurisdiction over the state claims.  Id.

The Complaint, like the complaint in Brayall, asserts numerous state law theories of liability (including Chapter 93A) to which are appended three RICO claims.  Not only do the state claims here outnumber the federal claims, as the court found compelling in Brayall, but they raise factual and legal issues which are distinct from those presented by the RICO claim. Id. at *5.  The RICO claims are brought against the Individual Defendants for alleged acts of coercion and fraud.  (Complaint, ¶¶ 116 – 120; 126 – 130; 136 – 140).  By contrast, the state claims include allegations regarding the Church's withdrawal of its affiliation with the General Convention and the Massachusetts Association, the process for admitting new members, and the application of a provision of the Church's By-Laws pertaining to dissolution.  (Complaint, ¶ 141 – 146; 148 –153).  Not only are these issues factually distinct, but they also cover matters of state law over which jurisdiction has been assigned specifically to the Attorney General and the Supreme Judicial Court.

Because of the predominance here of distinct state law claims, the responsibility for which rests with the Attorney General and the Supreme Judicial Court, this Court should decline to exercise whatever jurisdiction it may have to adjudicate those claims in this proceeding.

**C.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE DECLARATORY JUDGMENT CLAIMS BECAUSE THE PLAINTIFFS LACK STANDING TO PURSUE THOSE CLAIMS.**

Regardless of abstention principles, this Court lacks subject matter jurisdiction over Counts IV and V because the Plaintiffs do not have standing to assert those claims against the Church.  See Comfort ex rel. Neumyer v. Lynn School Committee, 283 F. Supp. 2d 328, 362 n.57 (D. Mass. 2003) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998)) (lack of standing deprives court of subject matter jurisdiction).  That standing rests exclusively with the Attorney General, who has the sole authority to regulate and oversee public charities such as the Church.  The fact that the Attorney General has not joined in this action – and has, in fact, instituted and prosecuted his own action in state court – is fatal to the Plaintiffs' claims.[6]

**1.    The Church is a public charity.**

The Church is a public charity.  In 1823, the Church was "incorporated and established as a religious society" by special act of the Massachusetts legislature.  Mass. St. 1823, c. 106, § 1. Chapter 180 of the Massachusetts General Laws, governing charitable corporations, applies to:

> all corporations whenever established, except so far as such application may be inconsistent with provisions still in force of any special acts of incorporation, enacted before March eleventh, eighteen hundred and thirty-one, and not subject to amendment, alteration or repeal by the general court, or with provisions of any special acts of incorporation enacted after October first, nineteen hundred and seventy-one.

---

[6] The fact that Count IV also seeks relief against Bostonview is of no consequence.  As Plaintiffs acknowledge, Bostonview is wholly owned by the Church, and contains the chapel and church offices, as well as residential units. Complaint, ¶ 15.  The relief the Plaintiffs seek against Bostonview necessarily implicates all of the concerns and legal principles addressed throughout this memorandum.

    BOS_438486_1/RMCCARTHY

Mass. Gen. L. ch. 180, § 1.  A "corporation" is defined as "a domestic corporation . . . heretofore established either by general or special law for any one or more of the purposes mentioned in section four."  Id. § 2(c).  Section 4, in turn, states that a corporation may be formed for "for any civic, educational, charitable, benevolent or religious purpose."  Id. § 4(a).  And in Congregational Church of Chicopee Falls v. Attorney General, 376 Mass. 545, 548-49, 381 N.E.2d 1305, 1307-08 (1978), the Supreme Judicial Court ruled that an incorporated church is a "charitable corporation" as well as a "public charity," and is subject to the provisions of Chapter 180.

## 2.    The Church is subject to the exclusive oversight of the Attorney General.

As a public charity, the Church is subject to exclusive oversight by the Attorney General. By statute, "[t]he attorney general shall enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent breaches of trust in the administration thereof."  Mass. Gen. L. ch. 12, § 8.  In order to provide this oversight function, the Legislature created a Division of Public Charities "under the direction and control of the Attorney General."  Id. § 8B.  The Attorney General has broad powers to conduct investigations "whenever he believes that charitable funds have not been or are not being applied to charitable purposes or that breaches of trust have been or are being committed in the administration of a public charity."  Id. § 8H.  The Attorney General has the authority to enforce compliance with his investigations, id. § 8I, as well as the authority to "formulate such reasonable rules and regulations as may be necessary to carry out the provisions of sections eight to eight M, inclusive."  Id. § 8J.  Finally, "[t]he attorney general shall be made a party to all judicial proceedings in which he may be interested in the performance of his duties under the provisions of sections eight to eight M."  Id. § 8G.

In <u>Weaver v. Wood</u>, 425 Mass. 270, 680 N.E.2d 918 (1997), the Supreme Judicial Court

reiterated the unique position of the Attorney General to police a public charity's use of its

assets: "[w]e consistently have held that only the Attorney General can bring an action alleging

the misuse of charitable assets." <u>Id.</u> at 275,  680 N.E.2d at 922.   <u>See also</u> <u>Dillaway v. Burton</u>,

256 Mass. 568, 573, 153 N.E. 13, 16 (1926) (no standing to bring an action alleging abuses in the

administration of a public charity due to the Attorney's General's exclusive function in that

area); <u>Burbank v. Burbank</u>, 152 Mass. 254, 256-57, 25 N.E. 427, 428 (1890) (no standing to

bring an action concerning the assets of a public charity when the Attorney General declined to

participate in the suit).

The <u>Weaver</u> court recognized a single exception to this principle, "where the plaintiff

asserts interests in such organizations which are distinct from those of the general public."

<u>Weaver</u>, 425 Mass. at 276, 680 N.E.2d at 923.  Specifically, <u>Weaver</u> noted that such an interest

would include instances "where the member has a right to exercise a vote in connection with

some aspect of the charity's affairs . . . and is prohibited from doing so." <u>Id.</u>  <u>See also</u> <u>Garland v.</u>

<u>Beverly Hospital Corp.</u>, 48 Mass. App. Ct. 913, 914, 720 N.E.2d 838,  840 (1999) (no standing,

due to lack of interest other than that of the general public, to compel review of decisions by the

trustees of a charitable trust); <u>Ames v. Attorney General</u>, 332 Mass. 246, 250-51, 124 N.E.2d

511, 513-14 (1955) (no standing when plaintiff had no interest in the charitable trust other than

that of the public).

Additionally, in <u>Lopez v. Medford Community Center, Inc.</u>, 384 Mass. 163, 424 N.E.2d

229 (1981), the court held that the only claim the plaintiffs could assert against the defendant

charitable corporation were claims that the plaintiffs were themselves denied membership in the

organization, even though their complaint sought broad review of alleged board mismanagement

of charitable assets.  <u>Id.</u> at 168, 424 N.E.2d at 233.  These principles of exclusivity are so strong,

in fact, that the Supreme Judicial Court has called judicial attempts to participate in this process

"an intolerable interference by the judiciary in the executive department of the government and

would be in violation of art. 30 of the Declaration of Rights." Ames, 332 Mass. at 253, 124

N.E.2d at 515.

> **3.    None of the Plaintiffs has a sufficiently distinct interest to pursue the declaratory judgment claims against the Church.**

As an initial matter, it is clear that the General Convention is the only Plaintiff pursuing

the declaratory judgment claim concerning the disposition of the Church's assets. See

Complaint, ¶ 146 ("[T]he *Denomination* [*i.e.* the General Convention] asks that the Court declare

that it is entitled to hold the assets of the Church."). It is less clear which Plaintiffs are pursuing

the claim concerning membership in BSNJ, as the Complaint states simply that "Plaintiffs" ask

the Court for a declaration concerning the new memberships.[7] In any case, none of these

Plaintiffs has a sufficient individual interest that gives rise to standing.

The Court can easily dispose of the Massachusetts Association, since it has no connection

to this dispute whatsoever. The Plaintiffs recognize that the Massachusetts Association has no

interest in the alleged dispute over the Church's assets, since that claim is brought only by the

General Convention. As to the validity of the new memberships in the Church, the Complaint

does not even attempt to articulate the interest or involvement of the Massachusetts Association

in that alleged dispute. The Plaintiffs' silence on this point speaks volumes.

Chapin also lacks the individualized interest necessary to prosecute the declaratory

judgment claims. Unlike the plaintiffs in Lopez, Chapin has not been denied membership in the

---

[7]    One thing that *is* clear – and ironic – from the Complaint is that the Plaintiffs are pursuing this action as a pure "money grab." In a footnote to Count IV (concerning the Church's assets), the Plaintiffs state that they will not challenge the validity of membership votes relating to disaffiliation if they succeed on Count IV, but will challenge the validity of those votes if Count IV is unsuccessful. Complaint, at 25 n.1. The Plaintiffs' claim to the Church's assets is entirely dependent on their claim that the Church's disaffiliation triggers the dissolution provisions of the By-Laws. If the votes to disaffiliate are declared void, the Plaintiffs' claim to the assets disappears. The Plaintiffs apparently are willing to overlook what they perceive to be the admission of sham members and the degradation of their Swedenborgian principles if that is what they need to do to obtain a multi-million dollar piece of property.

BOS_438486_1/RMCCARTHY

Church.  Indeed, the Complaint alleges that "Plaintiff, George Chapin, is a member of the Boston Society of the New Jerusalem, Inc. (Swedenborgian)."  Complaint, ¶ 11.  Similarly, unlike the situation posited in Weaver, Chapin does not allege that he has been denied the opportunity to exercise his voting rights as a Church member.  Chapin has no claim to Church assets.  His status as a Church member does not confer on him any right to make claims concerning the management of Church property that are greater than any other member of the public, as represented by the Attorney General.  See Weaver, 425 Mass. at 277, 680 N.E.2d at 923 ("[W]e have never held that membership in a public charity, alone, is sufficient to give standing to pursue claims that a charitable organization has been mismanaged or that its officials have acted ultra vires.").

The General Convention, finally, has no standing to assert either of the declaratory judgment claims.  As to Count V, the General Convention has not alleged (nor is it the case) that it has any membership interest or voting rights in the Church; nor has it alleged (and, again, it is not the case) that the General Convention has any right to participate in the governance or day-to-day affairs of the Church.  The General Convention has no particularized interest in the manner in which the Church members are chosen that allows it to pursue relief other than through the auspices of the Attorney General as a member of the general public.

The General Convention also lacks standing to pursue the claims asserted in Count IV, because it has no cognizable interest in the assets of the Church.  As argued more fully *infra* at 19, the General Convention could not even arguably have an interest in the Church property unless the Church had been formally dissolved and had "ceased to exist."  That is clearly not the case, as the Church is still very much in existence.  The fact that the Church has chosen not to maintain a relationship with the General Convention in no way means that its existence has ended.  Since the condition precedent of the Church's dissolution has not occurred, the General

BOS_438486_1/RMCCARTHY

Convention has no interest in Church property and no standing to seek a declaratory judgment concerning the disposition of that property.

> **4.    The First Amendment precludes this Court from resolving disputes over the composition of the Church's membership.**

It is a fundamental precept of First Amendment jurisprudence that civil courts may not intervene in disputes concerning religious doctrine, discipline, faith, or internal organization. Jones v. Wolf, 443 U.S. 595, 602 (1979); Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 785, 625 N.E.2d 1352, 1355 (1994).  This is, however, precisely what the Plaintiffs are asking this Court to do in Count V.  Claiming "the bylaws provide that all new members must be confirmed before joining the Church" (which, in fact, the By-Laws do not provide), the Plaintiffs are asking this Court to determine, and change, a matter integral to the Church as a religious body – the admission of members to the Church and the administration of the sacred "Rite of Confirmation."  Complaint, ¶ 149; By-Laws, Article IV, Sections 1 and 3.

Any adjudication of such matters necessarily would require this Court to conduct an investigation into matters intimately connected to religious doctrine and faith.  It is not a matter simply of analyzing whether procedural mechanisms in the By-Laws have been followed precisely.  The Court could not resolve this alleged dispute without asking, for example, how much indoctrination of potential members is required; how much of a commitment to Swedenborgianism must a potential member demonstrate; how the Church must balance strict doctrinal adherence with maintaining an active and committed membership base; or what the role of a Pastor and Church Council should be in evaluating the appropriateness of inviting new members into the Church.  In short, the Court would have to decide how much faith is enough faith, and whether a ritual of confirmation must precede membership.  Such a determination by any branch of government is abhorrent to the core principles of the First Amendment, as well as the Massachusetts Declaration of Rights.  See Mass. Const. Art. II.

BOS_438486_1/RMCCARTHY

**D.    COUNT IV SHOULD BE DISMISSED BECAUSE THE CHURCH HAS NOT "DISSOLVED" OR "CEASED TO EXIST."**

Even if the Plaintiffs did have standing to pursue their declaratory judgment claims, Count IV should be dismissed because the plain language of the By-Laws demonstrates that the conditions precedent to a transfer of the property to the General Convention have not occurred. The General Convention (the only Plaintiff asserting a claim under Count IV) bases its entire argument on Article X, Section 3 of the By-Laws, which is entitled "Dissolution," and which provides as follows:

> In the event that the religious body known as the Boston Society of the New Jerusalem, Inc. shall cease to exist, all funds and holdings shall be transferred to the General Convention of the New Jerusalem in the United States of America.  These assets shall be held in escrow for the establishment of another General Convention of the New Jerusalem (Swedenborgian) Church within the City of Boston, Massachusetts.  After a period of twenty (20) years, should no such Church exist, the capital and income therefrom shall revert to the General Convention of the New Jerusalem (Swedenborgian) with any restrictions of uses which may have been voted by the Society members at the time of dissolution.

The General Convention does not allege, however, that the Church has been "dissolved" or has "ceased to exist" – since it has done neither.  As a Massachusetts charitable corporation, the only way that the Church could dissolve would be by petition filed with the Supreme Judicial Court. Mass. Gen. L. ch. 180, § 11A.  Instead, the General Convention alleges merely that the Church has "disaffiliated itself from the [General Convention]."  Complaint, ¶ 143.

Simply put, the General Convention is attempting to equate the Church's decision to disassociate itself from the General Convention with a dissolution – a complete cessation of the Church's existence.  Clearly established principles of law, and simple common sense, demonstrate that the General Convention's position is without merit.  The By-Laws of a corporation are a contract between the corporation and its members.  Lopez, 384 Mass. at 168, 424 N.E.2d at 232.  Interpretation of a contract is ordinarily a question of law for the court.

Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass. App. Ct. 502, 504-05, 803 N.E.2d 744, 747 (2004); Agri-Mark, Inc. v. Niro, Inc., 233 F. Supp. 2d 200, 209 (D. Mass. 2002).  If the language of the provision at issue is unambiguous, the language must be interpreted according to its plain terms.  Agri-Mark, Inc., 233 F. Supp. 2d at 209.  The only Court with the authority to interpret the By-Laws relating to dissolution is the Supreme Judicial Court, in the context of a dissolution proceeding.  Mass. Gen. L. ch. 180, § 11A.

The language of the By-Law provision is clear and unambiguous.  There is no mention of "disaffiliation" or any other term that even arguably suggests a mere separation from the General Convention.  The provision specifically uses the phrase "cease to exist" in the context of "Dissolution."  There can be no debate about the meaning of that phrase.

The clarity of this phrase is even more evident from the use of the word "dissolution" both in the heading for that section and in the text of the provision itself.  In the context of a charitable corporation, "dissolution" is a term of art that is defined specifically by statute and carries with it a specific procedure that has not been implemented here.  Chapter 180, Section 11A of the Massachusetts General Laws provides that:

> A charitable corporation constituting a public charity organized under the provisions of general or special law, which desires to close its affairs may, by vote of a majority of its board of directors, authorize a petition for its dissolution to be filed in the supreme judicial court setting forth in substance the grounds of the application for dissolution and requesting the court to authorize the administration of its funds for such similar public charitable purposes as the court may determine. *The provisions of this section shall constitute the sole method for the voluntary dissolution of any such charitable corporation.*

Mass. Gen. L. ch. 180, § 11A (emphasis added).

The Plaintiffs have not alleged – nor could they – the Church has utilized or even attempted to utilize this procedure.  Since this procedure is the exclusive method by which the Church could "dissolve" or "cease to exist," no reasonable interpretation of the By-Laws would

BOS_438486_1/RMCCARTHY

allow the provisions of Article X, Section 3 to come into play under the present circumstances.

As a matter of law, therefore, there is no basis on which the Plaintiffs could prevail on Count IV,

and it should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, and the reasons set forth in the Individual Defendants'

memorandum in support of their motion to dismiss, the Complaint against the Church and

Bostonview should be dismissed.

BOSTON SOCIETY OF THE NEW
JERUSALEM, INC. and BOSTONVIEW
CORORATION,
        Defendants

By their attorneys,


/s/ Brian H. Lamkin
Richard J. McCarthy (BBO# 328600)
Brian H. Lamkin (BBO# 635688)
EDWARDS & ANGELL LLP
101 Federal Street
Boston, MA  02110
(617) 439-4444