Not Reported in F.Supp.
RICO Bus.Disp.Guide 6861
(Cite as: 1988 WL 72766 (D.Mass.))

Page 1

United States District Court, D. Massachusetts.

Valerie A. **BRAYALL** and Richard M. **Brayall,**
v.
**DART** INDUSTRIES, INC., David McLean, Arnold Mathias, Jon Nelson, Thomas M. Damigella, Ann S. Damigella, Thomas J. Damigella, Shirley Jacobs, and Martin J. Jacobs.

CIV.A. No. 87-1525-WF.

Feb. 3, 1988.

Memorandum and Order

WOLF, District Judge.

*1 Plaintiffs Valerie and Richard Brayall are independent distributors of Tupperware products who claim that numerous wrongs, including various misrepresentations and unfair and deceptive business practices, were committed by defendants to induce them to become distributors of Tupperware products. Defendants are Dart Industries, Inc. ("Dart"), the company which manufactures and sells Tupperware products through its Tupperware division, known as Tupperware Home Parties Company ("Tupperware")(not a defendant); David McLean, President and Sales Manager for the northeast region for Tupperware from 1981- 1985; Arnold Mathias, who succeeded to McClean's position in 1985; John Nelson, Executive Vice President--U.S.A. Sales for Tupperware from 1979 through January, 1985; and Thomas M., Ann S. and Thomas J. Damigella (the "Damigellas") and Shirley and Martin Jacobs (the "Jacobs"), also independent distributors of Tupperware products. Now at issue is whether plaintiffs' pendent state law claims should be dismissed without prejudice or remanded to state court, and their claim based on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* temporarily stayed. For the reasons set forth below, the court concludes that remand of the state claims to state court is appropriate. The court further concludes that plaintiffs' RICO claim should be temporarily stayed until May 1, 1988 so that the parties may address in state court the most immediate issue in this case, plaintiffs' request for a preliminary injunction.

I. *Facts and Prior Proceedings*

The original complaint in this action was filed in the Middlesex Superior Court of the Commonwealth of Massachusetts. The case was removed by defendants to federal court. Plaintiffs subsequently filed an amended complaint (the "First Amended Complaint"). They have moved for a preliminary injunction based on certain of their state law claims, but not on their RICO claim. Defendants have moved to dismiss the First Amended Complaint.

The First Amended Complaint contains eight counts--seven based on state law and one based on federal law--and a request for a mandatory preliminary injunction requiring Tupperware to renew the distributorship agreement between Tupperware and plaintiffs. The essence of plaintiffs' claims is that defendants used intensive motivational programs and "cult-like" rituals to indoctrinate plaintiffs with the belief that they should orient their lives toward becoming Tupperware distributors; that defendants misrepresented the financial benefits of being a Tupperware distributor; and that as a result of defendants' indoctrination and misrepresentations plaintiffs quit their jobs, sold their home in Connecticut, and moved to Massachusetts to become Tupperware distributors.

The sole basis of federal jurisdiction in this case is the RICO claim asserted against some, but not all, of the defendants. There is no federal claim asserted against the Damigellas or the Jacobs, who are before this court as pendant parties only.

Plaintiffs' state law claims and the defendants against whom they are asserted are as follows: Count I--Unfair and Deceptive Trade Practices under Mass.Gen.L. ch. 93A (all defendants); Count III--Fraud (all defendants except Mathias); Count IV--Breach of Fiduciary Duty (Dart, Mathias, Nelson, McLean); Count V--Breach of Contract (the Damigellas, the Jacobs); Count VI-- Breach of Implied Covenants of Good Faith and Fair Dealing (Dart, the Damigellas, the Jacobs); Count VII--Intentional Interference with Contractual and Advantageous Relations (all defendants); Count

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.                                                                                                                  Page 2
RICO Bus.Disp.Guide 6861
**(Cite as: 1988 WL 72766 (D.Mass.))**

VIII--Intentional Infliction of Emotional Distress (Dart, McLean, Mathias).

*2 At a scheduling conference the court raised the question of whether because of the apparent predominance of the state law claims it would be appropriate to decline to exercise pendent jurisdiction over those claims. The parties were instructed to submit memoranda addressing this issue.

Plaintiffs favor requiring litigation of the state law claims in state court and staying litigation of the federal RICO claim. Defendants oppose this.

II. *Discussion*
A. *Applicable Law*

A federal district court's decision whether to exercise jurisdiction over state law claims which are appended to one or more federal claims is governed by the principles originally set forth in *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715 (1966), and recently reaffirmed by the Supreme Court in *Carnegie-Mellon Univ. v. Cohill,* --- U.S. ----, 56 U.S.L.W. 4101 (January 20, 1988). Those principles establish that the question "necessitates a two-part inquiry." *Dimond v. District of Columbia,* 792 F.2d 179, 188 (D.C.Cir.1986).

First, the court must have power under Article III to adjudicate the pendent claim. Such power exists when a plaintiff presents a sufficiently substantial federal claim, see *Hagans v. Lavine,* 415 U.S. 528, 538 ... (1974), and the plaintiff's federal and local law claims "derive from a common nucleus of operative fact" and would ordinarily be tried in a single proceeding. See, e.g., *United Mine Workers v. Gibbs,* 383 U.S. [at] 725.... If a district court has power to adjudicate a pendent claim, the court must then engage in a second inquiry to determine whether to exercise its discretion to decide the local claim. See, e.g., *United Mine Workers v. Gibbs,* 383 U.S. at 726.

*Id.* at 188. See also *Carnegie-Mellon Univ.,* 484 U.S. at ----, 56 U.S.L.W. at 4103.

A federal claim is not sufficiently "substantial" under the first prong of the *Gibbs* analysis if it is " 'so attenuated and unsubstantial as to be absolutely devoid of merit,' *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579 (1904); 'wholly insubstantial,' *Bailey v. Patterson,* 369 U.S. 31, 33 (1962); 'obviously frivolous,' *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288 (1910); 'plainly unsubstantial,' *Levering and Garrigues Co. v. Morrin,* 289 U.S. 103, 105 (1933); or 'no longer open to discussion,' *McGilvra v. Ross,* 215 U.S. 70, 80 (1909)." *Hagans v. Lavine,* 415 U.S. 528, 536-37 (1974). See also *Ex Parte Poresky,* 290 U.S. 30, 31-32 (1933).

With regard to the second prong, the Court in *Gibbs* set forth a number of factors which should inform a federal court's decision whether to exercise its discretionary jurisdiction over pendent state claims when it has the power to do so. In *Gibbs* the Court stated:

*3 That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins,* 304 U.S. 64. *Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a sure-footed reading of applicable law.* Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Similarly, if it appears* that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the *state claims may be dismissed without prejudice and left for resolution to state tribunals.* There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy, that the argument for exercise of pendent jurisdiction is particularly strong.... Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed. Rule Civ.Proc. 42(b). If so jurisdiction should ordinarily be refused.

*Gibbs,* U.S. at 726-27 (footnotes omitted and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
RICO Bus.Disp.Guide 6861  
(Cite as: 1988 WL 72766 (D.Mass.))

Page 3

emphasis added). See also *Carnegie-Mellon Univ.*, 484 U.S. at ----, 56 U.S.L.W. at 4103. In addition, "the same factors that are relevant to the exercise of jurisdiction over pendent claims apply to pendent parties." 13B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d § 3567.2 at 160 (1984).*

The Court in *Gibbs* also cautioned against allowing what is essentially a state law case to be brought in federal court simply because a federal claim is appended to it, stating:

[R]ecognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's efforts to impose upon it what is in effect only a state law case. *Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed. Gibbs,* 383 U.S. at 727 (emphasis added).

As described below, application of these principles to the facts of this case persuades this court that the state law claims constitute the "real body" of this case and ought to be litigated in state court.

B. *The Court Has Power to Adjudicate Plaintiffs' State Law Claims*

With regard to the first prong of *Gibbs'* two-step analysis, the court finds that plaintiffs' federal and state law claims derive from a common nucleus of operative facts, and that plaintiffs "would ordinarily be expected to try them all in one judicial proceeding." *Carnegie-Mellon Univ.*, 484 U.S. at ----, 56 U.S.L.W. at 4103, quoting *Gibbs*, 383 U.S. at 725. Plaintiffs' allegations describe a single scheme or course of conduct, and the same misrepresentations, omissions, and unfair and deceptive business practices underly all of plaintiffs' claims. In addition, plaintiffs' federal RICO claim facially appears sufficiently substantial to provide a basis for federal jurisdiction. Although defendants have moved to dismiss the RICO claim, it cannot be said that that claim "is obviously without merit' or [that] 'its unsoundness so clearly results from previous decisions ... as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy....' " *Ex Parte Poresky,* 290 U.S. at 32,

quoting *Levering & Garrigues Co.*, 289 U.S. at 105. See also *Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1, 5 (1st Cir.), cert. denied, 464 U.S. 936 (1983). Thus, the court has the power to adjudicate plaintiffs' pendent state law claims.

*4 Similarly, the court has the power to assert pendent party jurisdiction over the Jacobs and the Damigellas because plaintiffs' state law claims against them and plaintiffs RICO claims against other defendants arise from a common nucleus of operative facts. See *Bonanno,* 708 F.2d at 6-7. Thus, unless Congress in the RICO statute intended to remove the usual authority of federal courts to hear certain pendent party claims, this court has the discretion to exercise jurisdiction over the claims against the Jacobs and the Damigellas. *Id.* at 7; *Aldinger v. Howard,* 427 U.S. 1, 18 (1976). The court does not discern such an intent in the RICO statute which, unlike the statute in *Bonanno*, authorizes actions against individuals. Accordingly, it would be permissible for the court to require that the claims against the Damigellas and the Jacobs be litigated in federal court.

C. *The Pendent Claims Should Be Dismissed*

Although this court has the discretion to adjudicate plaintiffs' state law and pendent party claims, consideration of the factors enumerated in *Gibbs* indicates that exercise of pendent jurisdiction is not warranted.

As discussed earlier, the Court in *Gibbs* stated that a district court should be reluctant to exercise its pendent jurisdiction when "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Gibbs,* 383 U.S. at 726, quoted in *Carnegie-Mellon Univ.*, 484 U.S. at ----, 56 U.S.L.W. at 4103 n. 7. This is such a case. The First Amended Complaint contains at least eight theories of liability, only one of which is based on federal law. Moreover, at least fifteen unfair or deceptive business practices are alleged in Count I and eight allegedly fraudulent acts are identified in Count III. Thus, consideration of the scope of the theories and issues raised indicates that state law issues predominate numerically.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
RICO Bus.Disp.Guide 6861  
(Cite as: 1988 WL 72766 (D.Mass.))

Page 4

As to proof, it is clear that evidence and testimony relating to plaintiffs' state law claims will dominate the trial of this action. While there will be some overlap in the evidence pertaining to the federal RICO claim and the state law fraud and Mass.Gen.L. ch. 93A claims, plaintiffs' allegations of breach of fiduciary duty, breach of contract, breach of implied covenant of good faith and fair dealing, intentional interference with contractual and advantageous relations, and intentional infliction of emotional distress, raise factual and legal issues which are distinct from those presented by the RICO claim.

*5 Finally, state issues predominate with regard to the remedies plaintiffs seek. Plaintiffs have requested preliminary injunctive relief based only on defendants' alleged breach of the implied covenant of good faith and fair dealing and their alleged violations of Mass.Gen.L. ch. 93A. Thus, the immediate issues presented by plaintiffs' motion for a preliminary injunction are exclusively matters of state law.

As the foregoing indicates, this is a classic state law case to which a federal claim has been appended. *Gibbs,* 383 U.S. at 727. In such circumstances, it is appropriate for a federal district court to relinquish jurisdiction over the state law counts. See *Avins v. Hannum,* 497 F.Supp. 930, 947 (E.D.Pa.1980); *Merritt v. Colonial Foods, Inc.,* 499 F.Supp. 910, 915 (D.Del.1980); *Hubbard v. Moore,* 537 F.Supp. 126, 131 (W.D.Ark.1982); *Winter v. Three Rivers Motors, Co.,* 312 F.Supp. 962, 964 (W.D.Pa.1970). But see *Morley v. Cohen,* 610 F.Supp. 798, 821-22 (D.Md.1985) (court exercised pendent jurisdiction over state law claims even though the only federal claim was based on RICO).

The conclusion that the state law claims in this case should be litigated in state court is reinforced by the recognition that at least some of those claims are likely to present uncertain issues of state law. Considerations of comity and clarity indicate that such questions ought to be decided by the courts of the Commonwealth of Massachusetts. See *Gibbs,* 383 U.S. at 726. For example, the question of whether particular conduct constitutes an unfair business practice under Mass.Gen.L. ch. 93A "is a definitional problem of longstanding...." *Leving v. Forbes & Wallace, Inc.,* 8 Mass.App.Ct. 498, 503

(1979). As the Supreme Judicial Court has stated, "not every unlawful act is automatically an unfair (or deceptive) one under G.L. c. 93A." *Mechanics Nat'l Bank v. Killeen,* 377 Mass. 100, 109 (1979). The Massachusetts Appeals Court has stated that to be actionable "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings,* 8 Mass.App.Ct. at 504. Although this court is competent to adjudicate plaintiffs' Mass.Gen.L. ch. 93A claim, a "surer-footed reading of the applicable law," *Gibbs,* 383 U.S. at 727, may be obtained if the question whether defendants' alleged conduct in this case is sufficiently egregious to "raise an eyebrow" is decided initially by a state court with the possibility of an appeal to, and authoritative decision, by the Supreme Judicial Court of Massachusetts.

Similarly, plaintiffs' claims based on defendants' alleged breach of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress raise issues on which the law of Massachusetts is still developing and evolving. See, e.g., *Fortune v. National Cash Register Co.,* 373 Mass. 96 (1977); *Gram v. Liberty Mutual Ins. Co.,* 384 Mass. 659 (1981); *Gram v. Liberty Mutual Ins. Co.,* 391 Mass. 333 (1984) (covenant of good faith and fair dealing); *Foley v. Polaroid Corp.,* 400 Mass. 82, 99-100 (1987) (intentional infliction of emotional distress). These issues too are best presented to the Massachusetts courts for ultimate resolution by the Supreme Judicial Court.

*6 With regard to the other factors mentioned in *Gibbs,* it does not appear that plaintiffs' state law claims are so closely tied to some federal policy that adjudication of all claims in a single proceeding is particularly appropriate. See *Gibbs,* 383 U.S. at 727. Indeed, the federal policy at RICO's core--combatting traditional organized crime--is not implicated at all in this case.

In addition, while judicial economy often is served when all claims arising out of a common nucleus of operative facts are tried together, the potential efficiency to be achieved in this case would not be peculiarly substantial. Indeed, severance of the federal and state claims may promote efficiency because the relief available under RICO is also available under Mass.Gen.L. ch. 93A; thus

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
RICO Bus.Disp.Guide 6861  
(Cite as: 1988 WL 72766 (D.Mass.))

Page 5

litigation of the state claims ultimately may moot plaintiffs' RICO claim.

Finally, relinquishing jurisdiction over the state claims will have the salutary effect of avoiding the necessity to exercise pendent party jurisdiction over the Jacobs and the Damigellas, defendants against whom no federal claim is asserted.

D. *Remand Is Appropriate*

In *Carnegie-Mellon Univ.*, the Court recently ruled that a federal district court may, under certain circumstances, remand to state court, rather than dismiss, state law claims which are asserted in a removed case and over which the court has decided to relinquish jurisdiction. As the Court explained:

[A] remand will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case. In such a case, a dismissal will foreclose the plaintiff from litigating his claims. This consequence may work injustice to the plaintiff: although he has brought his suit in timely manner, he is time-barred from pressing his case. Equally important, and more easily overlooked, the foreclosure of the state-law claims may conflict with the principle of comity to States. The preclusion of valid state-law claims initially brought in timely manner in state court undermines the State's interest in enforcing its law. The operation of state statutes of limitations thus provides a potent reason for giving federal district courts discretion to remand, as well as to dismiss, removed pendent claims.

Even when the applicable statute of limitations has not expired, a remand may best promote the values of economy, convenience, fairness and comity. Both litigants and States have an interest in prompt and efficient resolution of controversies based on state law. Any time a district court dismisses, rather than remands, a removed case involving pendent claims, the parties will have to refile their papers in state court, at some expense of time and money. Moreover, the state court will have to reprocess the case, and this procedure will involve similar costs. Dismissal of the claim therefore will increase both the expense and the time involved in enforcing state law. Under the analysis set forth in *Gibbs*, this consequence, even taken alone, provides good reason to grant federal courts wide discretion to remand cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate.

*7 484 U.S. at ----, 56 U.S.L.W. at 4105 (footnotes omitted).

Although *Carnegie-Mellon Univ.* was a case in which all federal claims were dismissed, the analysis and broad language used by the Court are equally applicable to this case, which involves a continuing RICO claim. Remand, rather than dismissal, is appropriate in this case primarily because remand will expedite the state court's consideration of plaintiffs' request for preliminary injunctive relief. In addition, remand rather than dismissal will avoid the risk of unfair prejudice to plaintiffs if the statutes of limitations on some or all of plaintiffs' state law claims have expired while this action has been pending in federal court. Thus, the court believes that remand rather than dismissal will better "accomodate the values of economy, convenience, fairness, and comity, ... the animating principle behind the pendent jurisdiction doctrine...." *Id.*

E. *A Temporary Stay of the RICO Claim is Appropriate*

Plaintiffs request that litigation of their RICO claim be stayed pending a resolution of their state claims. Defendants oppose this. Although the court views this as a classic state law case to which a now almost obligatory RICO claim has been appended, it is not appropriate to stay indefinitely litigation of the RICO claim unless "exceptional circumstances" exist. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817 (1976); *Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16 (1982). See also *Bergeron v. Estate of Loeb,* 777 F.2d 792, 798 (1st Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1517 (1986). Such "exceptional circumstances" do not exist in this case. Thus, plaintiffs' request for an indefinite stay must be denied.

As indicated earlier, however, the most urgent matter in this dispute is plaintiffs' request for a preliminary injunction based on some of its state law claims. Accordingly, the court will temporarily stay litigation of the RICO claim until May 1, 1988

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
RICO Bus.Disp.Guide 6861  
**(Cite as: 1988 WL 72766 (D.Mass.))**

Page 6

so the parties may give their undivided attention to the motion for a preliminary injunction.

### III. *Order*

For the foregoing reasons, it is hereby Orderd that:

**\*8** 1. Plaintiffs' state law claims (Counts I, III-IX) are hereby Remanded to the Superior Court of the Commonwealth of Massachusetts;

2. Litigation of plaintiffs' federal RICO claim (Count II) is hereby Stayed until May 1, 1988;

3. Plaintiffs shall inform the court in writing by May 1, 1988 whether they wish to dismiss their RICO claim;

4. If plaintiffs do not voluntarily dismiss their RICO claim, the defendants may renew their motions to dismiss that claim;

5. If the RICO claim is not dismissed, all discovery relating to that claim shall be completed by May 1, 1989.

1988 WL 72766 (D.Mass.), RICO Bus.Disp.Guide 6861

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works