UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GENERAL CONVENTION OF THE NEW JERUSALEM IN THE UNITED STATES OF AMERICA, INC., THE MASSACHUSETTS ASSOCIATION OF THE NEW JERUSALEM (SWEDENBORGIAN), and GEORGE CHAPIN,<br>    Plaintiffs,<br><br>v.<br><br>EDWARD MACKENZIE, THOMAS KENNEDY, BOSTON SOCIETY OF THE NEW JERUSALEM, INCORPORATED (SWEDENBORGIAN), and BOSTONVIEW CORPORATION<br>    Defendants. | C.A. No. 04-10419-WGY |

**DEFENDANTS BOSTON SOCIETY OF THE NEW JERUSALEM, INC. AND BOSTONVIEW CORPORATION'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

   The opposition of Plaintiffs The General Convention of the New Jerusalem in the United States of America, Inc. ("General Convention"), Massachusetts Association of the New Jerusalem (Swedenborgian) ("Massachusetts Association"), and George Chapin ("Chapin") to the Motion to Dismiss of Defendant's Boston Society of the New Jerusalem, Inc. (the "Church") and Bostonview Corporation ("Bostonview"), is far more remarkable for what it does not say than for what it does. The Plaintiffs do not dispute that the Church is a charitable corporation subject to Chapter 180 of the Massachusetts General Laws; that the Church could only be dissolved under Chapter 180 by (along with other requirements) a petition before the Massachusetts Supreme Judicial Court; that such a dissolution has not taken place; that the Massachusetts Attorney General has the exclusive authority to oversee and regulate the operation

of public charities such as the Church; that an enforcement proceeding by the Attorney General against the Church is already pending in Massachusetts Superior Court; that the Attorney General has chosen not to intervene in the action before this Court; or that this Court has the inherent discretion to decline to exercise jurisdiction over the pendent state law claims.  The Plaintiffs ignore altogether the Defendants' arguments that the Younger and Burford abstention doctrines likewise require this Court to decline jurisdiction.

Indeed, the Plaintiffs devote almost a third of their brief to a regurgitation of the sensational facts they alleged in their Complaint – the vast majority of which have nothing to do with the declaratory judgment claims against the Church and Bostonview.  They supplement this regurgitation by attaching an article from The Boston Globe that further sensationalizes their allegations, and is based on hearsay, speculation, innuendo, and inadmissible character evidence.

In short, the Plaintiffs' opposition only highlights the weakness of their legal position, and emphasizes that it is both necessary and proper for this Court to dismiss the counts of the Complaint that are brought against the Church and Bostonview.

A.  **PLAINTIFFS DO NOT DISPUTE THAT FEDERAL ABSTENTION DOCTRINES REQUIRE THE DISMISSAL OF THE STATE-LAW CLAIMS.**

In their opening brief, the Church and Bostonview argued that two federal abstention doctrines require the dismissal of the state-law claims.  Defendants' Memorandum, at 6-9.  Under Younger v. Harris, 401 U.S. 37 (1971), as extended by Trainor v. Hernandez, 431 U.S. 434 (1977), federal courts should abstain from hearing claims that are the subject of a pending state investigatory or enforcement action.  The Plaintiffs do not challenge the scope of the Younger abstention doctrine, nor do they dispute the existence of an active civil proceeding in state court that the Attorney General brought against the Church.  Under these undisputed legal facts and principles, this Court should decline to exercise jurisdiction over the state-law claims.

Similarly, the Plaintiffs do not dispute that Burford v. Sun Oil Co., 319 U.S. 315 (1943), dictates that federal courts should abstain from hearing cases that are addressed by a comprehensive state regulatory scheme, and they do not dispute that such a scheme exists in Massachusetts.  As the Church and Bostonview have explained, the Attorney General has extensive – and exclusive – authority under Massachusetts law to investigate and regulate charitable corporations such as the Church.  See Mass. Gen. L. ch. 180, § 11A; ch. 12, §§ 8 and 8G.  The relief that the Plaintiffs seek against the Church and Bostonview falls squarely within the purview of the Attorney General, who is actively exercising that authority.  For this reason, as well, the Court should abstain.

**B.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION UNDER 28 U.S.C. § 1367.**

The Plaintiffs do not dispute that the Church and Bostonview have stated accurately the circumstances under which a federal court may decline to exercise supplemental jurisdiction. See Defendant's Memorandum, at 9-11.  They argue simply that the existence of a "common nucleus of operative fact" between the sole federal claim under RICO and the numerous state-law claims means that the Court should exercise jurisdiction over the state claims.

The Defendants do not dispute that there is some factual overlap between the Plaintiffs' federal and non-federal claims.  However, the "common nucleus" test is simply a threshold analysis to determine whether the exercise of supplemental jurisdiction is *permissible*.  It says nothing about whether the exercise of supplemental jurisdiction in a given case is *appropriate* under § 1367(c).

The Plaintiffs argue that the Court should exercise supplemental jurisdiction because the Church is a "necessary party" to the RICO claims.  Even if this were true, it is entirely irrelevant, since a party's status as "necessary" is not one of the tests enumerated in § 1367.  In any case, it

is not a true statement. The Plaintiffs themselves have acknowledged that the Church is not a necessary party to their RICO claims, since they have not asserted those claims against the Church. Indeed, under their theory of the case, they could not bring RICO claims against the Church, since they allege that the Church is the "enterprise," and an entity cannot be simultaneously a RICO defendant and a RICO enterprise. See, e.g., Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996).

The Plaintiffs' assertion that their state law claims do not predominate over the RICO claims is similarly unavailing. Again, they eschew any meaningful analysis of the "predominance" issue in favor of a repetition of their position that the federal and non-federal claims derive from a common nucleus of operative fact. They completely disregard the Church's argument that state claims predominate because they involve a far broader array of issues regarding the governance and operations of the Church and the interplay between the Church and the General Convention than the RICO claims, and because the RICO claims are not asserted against the Church or Bostonview.

The Plaintiffs' attempts to distinguish this case from Brayall v. Dart Indus., 1988 WL 72766 (D. Mass. Feb. 3, 1988), aff'd, 989 F.2d 484 (1st Cir. 1993), fall short of the mark. In Brayall, as in this case, the plaintiffs asserted numerous state law claims but only a single RICO claim. Even though the Plaintiffs here have split their RICO claim into three counts (subsections (b), (c), and (d) of 18 U.S.C. § 1962) to reflect slightly different theories, in reality they assert a single RICO claim based on their allegations that MacKenzie and Kennedy took over the Church to appropriate its assets. This artificial separation does not create a meaningful distinction between the present case and Brayall. Neither does their odd – and inaccurate – claim that the present case somehow advances the fight against "organized crime." The Brayall court

recognized that, notwithstanding some overlapping evidence between the state and federal claims, those plaintiffs' claims involved predominately state law issues. So, too, does the present case.

In short, the Plaintiffs provide no reason why this Court should exercise supplemental jurisdiction over any of their state-law claims.

C.   THE PLAINTIFFS LACK STANDING TO PURSUE THEIR DECLARATORY JUDGMENT CLAIMS AGAINST THE CHURCH AND BOSTONVIEW.

The Plaintiffs do not dispute that the Church is a charitable corporation, and as such under the regulatory authority of the Attorney General. Nor do they dispute that they lack standing to assert their declaratory judgment claims unless they have a particularized, individual interest in the relief they are seeking. Instead, they focus their argument in favor of standing almost exclusively on a flawed analysis of Trustees of Dartmouth College v. City of Quincy, 331 Mass. 219, 118 N.E.2d 89 (1954).

Although that case also involved a declaratory judgment action by a plaintiff alleging it was to receive certain charitable assets on the happening of a specified event, the court in Trustees of Dartmouth College was clear from the outset that "it is not disputed that an actual controversy exists between the parties arising from the facts which are herein summarized." Id. at 220, 118 N.E.2d at 90. Here, by contrast, the Church and Bostonview contend that there is no actual controversy, because the condition precedent to the General Convention's contingent interest in the Church's assets – the complete cessation of the Church's existence – has not occurred.[1] On the face of the pleadings, the Church has not ceased to exist, and the General Convention has no colorable claim to the Church's assets.

---

[1]   Trustees of Dartmouth College is also distinguishable because it involved the ongoing administration of a charitable trust created in a decedent's will. It did not involve a charitable corporation, the existence, governance, and dissolution of which is governed in large measure by statute and subject to a comprehensive regulatory scheme.

A claim for declaratory judgment may not be heard to the extent that "the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Riva v. Commonwealth of Mass., 61 F.3d 1003, 1009 (1st Cir. 1995). Furthermore, a claim for declaratory relief is not ripe unless "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality, to warrant the issuance of a declaratory judgment." McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003) (quoting Lake Carriers Ass'n v. MacMullan, 406 U.S. 498, 506 (1972)). Whether denominated an issue of standing or of ripeness, the Plaintiffs here, unlike the plaintiffs in Trustees of Dartmouth College, have no basis even to assert their claims in the first instance. Without the cessation of the existence of the Church, any interest of the General Convention in the assets of the Church is founded on an uncertain, speculative, and contingent event that may never occur. Accordingly, the Plaintiffs cannot pursue their declaratory judgment claims concerning the disposition of the Church's property.[2]

Plaintiff Chapin's argument that he has standing to raise the claims under Count V, concerning the allegedly improper admission of new members to the Church, is equally weak. Relying on cases holding that the denial of membership or voting rights in a charitable corporation can give rise to individual standing, Chapin argues that his right to vote as a member of the Church was "diluted" by the alleged actions of MacKenzie and Kennedy, and that this

---

[2]   The Plaintiffs' argument that the Church and Bostonview "ignore the standards governing a motion to dismiss," Plaintiffs' Memorandum, at 16, is meritless. Initially, it is ironic that the Plaintiffs complain about the Defendants' purportedly incorrect application of the Rule 12(b)(6) standard, when they discuss the standard in reference not to the applicable *federal* rule, but to *Massachusetts* Rule of Civil Procedure 12(b)(6) and state cases interpreting it. Plaintiff's Memorandum, at 16-17. More to the point, while Fed. R. Civ. P. 12(b)(6) requires this Court to make all factual inferences in favor of the Plaintiffs, that rule "does not require [the Court] to make the inferences necessary to establish that there is [standing for purposes of] federal jurisdiction." Id. at 67. Thus, this Court is not bound to infer that the Church has in fact ceased to exist, and may apply the Church's by-laws to determine, as a matter of law, that the Plaintiffs do not have standing to bring their claims because the condition precedent to an actual controversy concerning their rights has not occurred. See Agri-Mark, Inc. v. Niro, Inc., 233 F. Supp. 2d 200, 209 (D. Mass. 2002) (contract interpretation is matter of law for the court).

"dilution" gives him standing to challenge the admission of new members. In effect, Chapin argues that when the number of Church members increased, his vote (as the votes of all Church members) necessarily carried less weight.

Chapin cites no authority for this novel proposition. In each of the cases Chapin cites, the plaintiff's voting rights or membership interests were alleged to have been removed entirely. Lopez v. Medford Community Center, Inc., 384 Mass. 163, 424 N.E.2d 229 (1981); Jessie v. Boynton, 372 Mass. 293, 361 N.E.2d 1267 (1977); Mitchell v. Albanian Orthodox Diocese in America, Inc., 355 Mass. 278, 244 N.E.2d 276 (1969). None of those cases involved a plaintiff who remained a voting member of the organization, but claimed that his vote was less meaningful as a result of the defendants' alleged actions, and one case – Jessie – does not even mention the issue of standing.

This lack of support for Chapin's argument is hardly surprising. Under Chapin's theory, any member of a church could bring suit whenever the membership of the church increased, since a single vote obviously will be "diluted" when it becomes part of a larger pool of voters. This is neither a sensible nor a tenable result.

In short, the Plaintiffs have entirely failed to rebut the arguments by the Church and Bostonview that the Plaintiffs lack standing to pursue Counts IV and V of the Complaint.[3]

---

[3]     In a footnote, the Plaintiffs suggest that the Massachusetts Association has standing with respect to Count V because "by way of its by-laws, [it] had the right to determine if Church memberships were valid." Plaintiffs' Memorandum, at 11. They claim further that paragraphs 96 to 98 of the Complaint contain such allegations. In fact, those paragraphs say nothing of the kind. They simply allege that the Massachusetts Association passed a resolution that it did not recognize the expulsions from the Church, and was about to pass a resolution that it did not recognize the new members; and that letters went back and forth between the Association and the Church's counsel concerning these membership issues. The Plaintiffs have never alleged that the Association has the right to challenge memberships in the Church, nor have they submitted or even quoted the provisions of the by-laws supposedly giving the Association this "right." In any case, even if this statement about the Association were true, it would not confer standing on the Association. The cases cited by both the Church and the Plaintiffs involve claims by persons actually deprived of votes or membership in charitable corporations. The Plaintiffs have cited no cases, and the Church and Bostonview are aware of none, in which a third-party with a purported right to pass upon the validity of memberships had standing to assert a claim challenging the validity of those memberships.

**D. THE COURT WOULD BE REQUIRED TO RULE ON PURELY ECCLESIASTICAL MATTERS IF IT WERE TO PROCEED ON COUNT V.**

The Plaintiffs argue that this Court can determine who is a member of the Church and who is not by following a "neutral principles of law" approach and simply applying the Church's by-laws. The task they ask this Court to perform, however, is an impossible one. The "membership requirements" that the Plaintiffs ask this Court to interpret and apply are not simply requirements concerning how many votes are needed or what categories of members are permitted to vote under the by-laws. Rather, the Plaintiffs invite this Court to construe and apply the following section of the by-laws, entitled "Confirmation":

> All candidates for membership having no previous confirmation in a member church of the General Convention of the New Jerusalem (Swedenborgian) shall participate in sessions of doctrinal study leading toward confirmation under the guidance of the Pastor. The Pastor shall administer the Rite of Confirmation publicly, or privately at the candidate's request. Confirmation must be recorded in the Church's permanent records.

By-Laws, § 3 (Exhibit C to the Complaint).

The by-laws do not define "confirmation" or "Rite of Confirmation." They do not spell out how many "sessions of doctrinal study" are required, how long those sessions must be, what content they must contain, or how far along in these "sessions" a candidate must have progressed before being eligible for the "Rite of Confirmation." They do not explain how much "guidance" a candidate is required to have from the Pastor, nor what that "guidance" consists of. The by-laws quite appropriately leave these issues open and fluid, since they are intimately bound up with matters of faith and religious indoctrination. How can this Court decide whether a confirmation has been performed properly or at the appropriate time? How can this Court determine whether a candidate has received enough religious indoctrination to become a member of the Church, or whether he has been instructed in the "right" subjects, or whether he has spent enough time with the Pastor or demonstrated enough of an understanding of and belief in

Swedenborgian principles to participate in the Rite of Confirmation? The answer, quite simply, is that the Court cannot, and under the First Amendment may not, involve itself in these questions. Count V must, therefore, be dismissed.

E.   **THE CHURCH HAS NOT CEASED TO EXIST.**

Finally, try as they might, the Plaintiffs cannot posit any reasonable interpretation of the Church's by-laws that would lead to the conclusion that the Church has "ceased to exist," despite its ongoing, active status as a Massachusetts charitable corporation and a functioning religious institution. The Plaintiffs argue, in essence, that the Church's long history of affiliation with the General Convention means that it simply does not exist if that affiliation is broken. That argument is nonsensical, particularly in light of the clear and unambiguous requirement in the by-laws that the Church actually cease to exist before the provisions of Article X, Section 3 come into play.

This Court can and should apply the clear meaning of the by-laws as a matter of law. Agri-Mark, Inc. v. Niro, Inc., 233 F. Supp. 2d 200, 209 (D. Mass. 2002). There is no ambiguity in the phrase "ceased to exist." That phrase describes the complete opposite of the Church's current status as an active, growing, and functioning entity. It is used under the heading "Dissolution," an event which clear has not happened, and which could not happen other than through the intervention of the Supreme Judicial Court. If the Church wanted to provide that disassociation from the General Convention triggered a transfer of assets from the Church to the General Convention, it could have said so in the by-laws by substituting "shall disassociate from the General Convention" in place of "shall cease to exist." Instead, the by-laws clearly embody the Church's desire to make its property available to another local Swedenborgian church only if

the Church itself disappeared entirely. The General Convention's desire to appropriate the Church's valuable property does not change this basic fact.

**F.    CONCLUSION**

For the foregoing reasons, and the reasons previously stated in Defendants Boston Society of the New Jerusalem, Inc. and Bostonview Corporation's Memorandum of Law in Support of Motion to Dismiss, the Court should dismiss Counts IV and V of the Complaint.

> BOSTON SOCIETY OF THE NEW
> JERUSALEM, INC. and BOSTONVIEW
> CORORATION,
>         Defendants
>
> By their attorneys,
>
>
> /s/ Brian H. Lamkin
> Richard J. McCarthy (BBO# 328600)
> Brian H. Lamkin (BBO# 635688)
> EDWARDS & ANGELL LLP
> 101 Federal Street
> Boston, MA  02110
> (617) 439-4444
> (617) 439-4170 (fax)