UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
THE GENERAL CONVENTION OF THE       )
NEW JERUSALEM IN THE UNITED         )
STATES OF AMERICA, INC., THE        )
MASSACHUSETTS ASSOCIATION           )
OF THE NEW JERUSALEM                )
(SWEDENBORGIAN) and GEORGE          )
CHAPIN,                             )
      Plaintiffs,                   )                CIVIL ACTION
                                    )                NO. 04-10419-WGY
v.                                  )
                                    )
EDWARD MACKENZIE, THOMAS            )
KENNEDY, BOSTON SOCIETY OF          )
THE NEW JERUSALEM,                  )
INCORPORATED (SWEDENBORGIAN)        )
and BOSTONVIEW CORPORATION,         )
      Defendants.                   )
_____)

## DEFENDANTS EDWARD MACKENZIE AND THOMAS KENNEDY'S REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION TO DISMISS

### Introduction

Edward MacKenzie and Thomas Kennedy (hereinafter "defendants") respectfully submit this reply to plaintiff's Opposition to their Motion to Dismiss ("Opposition").

Even viewing the Complaint in the light most favorable to plaintiff, the allegations do not establish a "pattern" of alleged racketeering activity as the predicate acts alleged were sporadic, occurred over a modest period of time, and were merely part of a single alleged scheme to take control of the Church and to sell its principal asset – the 30-unit apartment house. Further, plaintiff's allegations fail to establish that defendants' conduct constituted racketeering as their participation in Church voting as alleged cannot be viewed as extortionate, nor can the several letters accurately

confirming Church votes be deemed mail fraud. Finally, the Complaint fails to plead that the alleged injuries were proximately caused by defendants' alleged racketeering. Accordingly, plaintiff's RICO claims should be dismissed with the attendant result that the Complaint in its entirety should be dismissed.[1]

    I.   Plaintiff Has Not Alleged A "Pattern" Of Racketeering Activity.

Plaintiff has not alleged a "pattern" of racketeering activity and, therefore, the RICO claims should be dismissed. See H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 232, 239 (1989) (discussing "pattern" requirement).

        A.   Plaintiff Has Alleged Only A Single Racketeering Scheme To Take Control Of The Church Which Is Not Actionable.

Despite Plaintiff's attempt in his Opposition to recast his Complaint, he alleges only that the defendants engaged in a single racketeering scheme to take control of the Church in order to sell the Church's apartments and thereby enrich themselves. See Complaint, ¶¶ 1, 6. Plaintiff's Complaint alone defines the alleged scheme, and the single scheme alleged fails to meet the "pattern" requirement for RICO claims.

The First Circuit and other courts have unambiguously held that a single scheme to obtain control of an organization and its assets does not satisfy the "pattern" requirement of RICO, even where defendants commit multiple racketeering acts over a period of time in order to accomplish this objective. See, e.g., Efron v. Embassy Suites, Inc., 223 F.3d 12, 19-20 (1st Cir. 2000); Vicom, Inc. v. Harbridge Merchant Serv., Inc., 20 F.3d 771, 782-83 (7th Cir. 1994); Giuliano v. Fulton, Civil Action No. 03-11293-REK, at 11-12 (D. Mass. 2003) (Keeton, J.). See also Motion, at 7-9.

---

[1] Other grounds for dismissal are addressed in defendants' Motion to Dismiss ("Motion").

Plaintiff's Opposition fails to distinguish in any meaningful way the present case from the above-cited "single scheme" RICO cases. Plaintiff, for example, states that in Efron defendants' alleged predicate acts were complete and that the plaintiff in that case "never alleged facts from which the Court could infer that the defendants would continue to defraud him …." See Opp., at 17 n.12. Plaintiff mischaracterizes Efron. In that case, the Court in fact recognized that the alleged racketeering acts (fraudulent capital calls) were continuing and that defendants might continue to engage in some limited racketeering acts to accomplish their goal (to obtain full control of the partnership and its hotel). Efron, 223 F.2d at 20 ("It is true that the scheme as alleged already had spanned twenty-one months, and that <u>its exact endpoint could not be ascertained</u> from the pleadings ….") (emphasis added). The Court nonetheless found that, despite the alleged continuing racketeering activity, there was still only a single scheme (albeit unrealized) and, therefore, no cognizable RICO "pattern." Id. Efron is, thus, indistinguishable from the present case insofar as the present case too involves a single alleged scheme (to obtain control of the Church and then to misappropriate its principal assets), whose alleged end-point has not yet been realized.

Plaintiff states in his Opposition for the first time and in a conclusory fashion that defendants "pose a threat of continued criminal activity." See Opp., at 18. Plaintiff similarly makes the conclusory assertion for the first time in his Opposition that defendants' alleged extortion and mail fraud define their "regular way of doing business" at the Church. See id. These bald assertions of regular and ongoing racketeering activities do not square with the Complaint, which alleges only sporadic past acts of alleged racketeering (see, e.g., Complaint, ¶¶ 117-118) designed to accomplish one

3

principal future objective, selling the apartments for personal gain. See Complaint, ¶¶ 1, 6, and 109.

Plaintiff cannot part from the clear allegation of his own Complaint that defendants were engaged in a single scheme to gain control of the Church. Accordingly, he has no viable RICO claims because he cannot meet the RICO "pattern" requirement.

> B.  Plaintiff Has Not Met RICO's "Pattern" Requirement Because He Has Alleged Racketeering Acts That Were Short-Lived And That Do Not Threaten To Continuously Repeat Themselves Into The Future.

To establish the requisite "pattern" of racketeering activity, plaintiff must allege multiple predicate acts of racketeering that, at a minimum, have continued or threaten to continue over a substantial period of time. H.J. Inc., 492 U.S. at 239. Continuity is either closed-ended, referring "to a closed period of repeated conduct," or open-ended, referring to "past conduct that by its nature projects into the future with a threat of repetition." Id. It is "centrally a temporal concept." Id. at 242. Plaintiff has not and cannot plead facts sufficient to meet this continuity requirement.

Plaintiff cannot establish "closed-ended continuity" in this case because defendants' alleged racketeering lasted, by plaintiff's own admission, for only eleven months (see Opp. at 17 n.13), which is not sufficient to establish a RICO pattern. To establish closed-ended continuity, plaintiff must demonstrate that the predicate acts in question extended over "a substantial period of time" in the past. H.J. Inc., 492 U.S. at 242. Some courts require more than a year as a matter of law. Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 611 (3d Cir. 1991) (twelve months deemed inadequate for RICO), cert. denied, 112 S.Ct. 2300 (1992); Primary Care Inv. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (8th Cir. 1993) (ten to eleven months deemed

4

inadequate).  See also Vicom, 20 F.3d at 780-782 (nine-month period of multiple acts of mail and wire fraud was too brief to meet RICO "continuity" requirement).

While not fixing a bright-line rule, the First Circuit has determined that a period of approximately two years of alleged racketeering is insufficient to meet the requirement for closed-ended continuity.  See Efron, 223 F.3d 12, 19 (1st Cir. 2000); Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44-46 (1st Cir. 1991) (multiple acts of alleged mail fraud over two year period).  In Efron, the First Circuit characterized a twenty-one month period of alleged racketeering as "a relatively modest period of time," and held that it was insufficient to establish a RICO pattern.  223 F.3d at 19.  Significantly, the Court made this finding even though the alleged racketeering (a series of fraudulent capital calls) was ongoing and its exact endpoint was still uncertain.  Id., at 19-20.  This is instructive for the present case where the alleged racketeering took place over a much shorter period, and it is also uncertain if or when the end-point (the sale of apartments) may be reached.  Based on these cases, plaintiff has failed to plead that the alleged predicate acts of extortion and mail fraud continued over a long enough period in the past to establish close-ended continuity.

Open-ended continuity requires plaintiff to allege that the racketeering constitutes a "regular way of doing business," which threatens to continue into the future.  H.J. Inc., 492 U.S. at 242.  Significantly, plaintiff does not contend in the Complaint that the alleged predicate acts of extortion and mail fraud were part of defendants' regular way of conducting business at the Church.  See Complaint, ¶¶120, 126-130, 136-140.  Instead, plaintiff alleges for the first time in the Opposition, and without any support in the Complaint, that the alleged extortion and mail fraud have become a regular way of

defendants' doing business. See Opp., at 18. Plaintiff's unsupported assertion is insufficient as a matter of law to satisfy the "pattern" requirement under RICO. See Vicom, 20 F.3d at 783 ("bald assertion" that racketeering activity is "regular way of doing business" is insufficient to avoid dismissal of RICO claim for failure to plead "pattern").[2]

    II.    <u>Plaintiff Has Not Pled Actionable Racketeering Activity</u>.

In addition to failing to meet the RICO "pattern" requirement, plaintiff has not pled actionable acts of racketeering.

    A.    <u>Defendants' Alleged Participation In Church Votes Was Not Extortionate</u>.

Plaintiff has failed to establish in his Opposition that defendants' participation in the church votes at issue was extortionate. First, plaintiff has not cited a single case that supports his novel claim that one may be guilty of the crime of extortion merely by lobbying (or even applying allegedly undue pressure) to affect the outcome of a church vote. See Opp., at 13. Plaintiff's citations to union and business cases are inapposite. See id., at 12-13.

Plaintiff's argument that defendants extorted votes by threatening to deprive members of church "benefits" is also unavailing. To claim Hobbs Act extortion, a person must have a property right of which he has been wrongfully deprived. Neither plaintiff nor any non-employee member of the Church has a property right to receive benefits or

---

[2] It is not sufficient for plaintiff to allege that general wrongdoing, such as alleged conversion, is ongoing and a regular way of doing business. See Opp., at 18-19. To support a RICO claim, plaintiff must allege instead that the predicate acts of racketeering themselves constitute a regular way of doing business. See Fleet Credit Corp. v. Sion, 893 F.2d 441, 448 (1st Cir. 1990) ("must demonstrate that the *predicate acts*," not mere violations of common law, "were a regular way of conducting the ongoing business").

any other assets from the Church, and the Complaint pleads no such entitlement.[3] Therefore, even if defendants threatened to deprive members of "benefits," such threats do not constitute actionable extortion. Plaintiff does not even attempt to address this issue in his Opposition.

At bottom, plaintiff tries to ground his RICO claims on the basis of "ad hominem" attacks and unsupported innuendo against Mr. Kennedy and, even more so, Mr. MacKenzie. Plaintiff argues that because of Mr. MacKenzie's troubled past, his mere presence and participation at the Church's voting constitutes criminal extortion because he allegedly instills fear in some members who, based on nothing more, supposedly follow his direction. See Opp., at 4-5. This reasoning must be rejected as it would essentially criminalize day to day interaction between Mr. MacKenzie and others based upon his alleged status as a past "bad actor." Plaintiff also argues that Mr. MacKenzie extorted votes merely by standing near or behind certain persons during the voting process. See Opp., at 14. This argument also should be rejected because it is far too flimsy a basis on which to ground a claim of criminal extortion.[4]

        B.       The Five Letters Accurately Reported Facts And Do Not Constitute Mail Fraud.

Plaintiff has not alleged facts to show that any of the five letters at issue constitutes mail fraud. Plaintiff merely asserts in his Opposition, without any specific support, that "[t]he mailings aided the Defendants in carrying out their scheme." See Opp., at 15. Such a naked assertion of mail fraud, especially where the mailings

---

[3] Indeed, such an "entitlement" according to the Complaint would be contrary to Swedenborgian doctrine and the Church's status as a charitable organization.

[4] Notably, plaintiff does not even allege whether any person altered his vote because Mr. MacKenzie was standing nearby during the voting process. See Complaint, ¶ 63.

7

themselves contain no misrepresentation of fact, is insufficient to survive a motion to dismiss. See Efron, 223 F.3d at 20 (1st Cir. 2000) (court must carefully "scrutinize" RICO claims premised on mail fraud "because of the relative ease with which a plaintiff may mold a RICO pattern" from flimsy mail fraud allegations).

In addition, assuming *arguendo* the existence of a fraudulent scheme, the mailings constitute at most only "post-fraud" accounting, which does not violate RICO. See Motion, at 15 (citing cases). Plaintiff has not attempted to rebut this argument in his Opposition.

Notably too, most of the letters were sent by the Church's counsel at Edwards & Angell LLP. Courts have routinely held that attorney correspondence that merely conveys facts and legal positions cannot constitute mail fraud. See Motion, at 15-16 (citing cases). Plaintiff's attempt to distinguish these cases is unavailing. See Opp., at 15 n.10.

### III. Plaintiff Has Not Pled Sufficient Facts To Show That The Alleged Injuries Were Proximately Caused By The Alleged Racketeering Activity.

Defendants argue in their Motion that the Complaint should be dismissed because the principal objective of the alleged racketeering scheme, the sale of the Church's apartments and the misappropriation of those proceeds, has not occurred and, therefore, plaintiff has not asserted any actionable RICO injury. In his Opposition, plaintiff points to miscellaneous minor alleged injuries in an attempt to respond to this argument and to avoid dismissal. See Opp., at 11-12. Plaintiff's response is ineffectual, however, because plaintiff fails to (and cannot) plead that these minor alleged injuries were proximately caused by defendants' alleged racketeering activities.

For example, plaintiff states that 1) defendants "received" as much as $25,000 from the Church's discretionary fund (Complaint ¶ 61); and 2) defendants allegedly used funds belonging to the Union to purchase furniture, computers, telephones and other equipment for their use when Mr. Kennedy was President of the Union and that the Church later paid $14,000 to the Union to replace these funds. See Complaint, ¶¶ 36-49. Plaintiff, however, does not allege that these payments resulted from any extortion. In fact, given that the payments were made before defendants were elected to any position of authority in the Church, the payments at issue could not have resulted from the allegedly extortionate election process.

After defendants were elected to be officers of the Church, plaintiff alleges that they obtained some unspecified amount of cash from the Church. See Complaint, ¶ 83-84. Plaintiff does not allege that the money was wrongfully obtained through racketeering activity. See Complaint, ¶¶ 83-84.

Plaintiff also alleges that defendants have used some Church resources (such as office supplies and equipment) for other businesses which defendants have allegedly conducted from the Church. See Complaint, ¶¶ 107-108. Plaintiff does not allege what these other businesses are or what, if any, resources defendants have wrongfully used. More importantly, plaintiff does not allege that the use of the Church's offices in this manner was proximately caused by any racketeering activity.[5] See Complaint, ¶¶ 107-108.

---

[5] Plaintiff further alleges that Mr. MacKenzie, at a time when he was only a member of the Church, extorted the Board of the Church to approve the payment of private secondary school for his daughter by lobbying for the payment and standing "behind" the Board Chairman at the time of the vote. See Complaint, ¶63. As discussed before, these alleged actions do not constitute extortion. Therefore, the payments cannot be the proximate result of extortion.

## Conclusion

For the reasons stated herein and in defendants' Motion to Dismiss, plaintiff's RICO claims should be dismissed. With the dismissal of the RICO claims, the Court should dismiss the entire Complaint as there is no basis to retain supplemental jurisdiction over the remaining state law claims.

Respectfully submitted,

Defendants
EDWARD MACKENZIE and
THOMAS KENNEDY,
By their attorneys,

*/s/ Nicholas C.*

Howard M. Cooper (BBO #543842)
Nicholas B. Carter (BBO #561147)
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: April 14, 2004

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by ~~mail~~ hand on 4/14/04.

*/s/ Nicholas C.*