UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GENERAL CONVENTION OF THE NEW JERUSALEM IN THE UNITED STATES OF AMERICA, INC., THE MASSACHUSETTS ASSOCIATION OF THE NEW JERUSALEM (SWEDENBORGIAN), and GEORGE CHAPIN, <br><br> Plaintiffs, <br><br> v. <br><br> EDWARD MACKENZIE, THOMAS KENNEDY, BOSTON SOCIETY OF THE NEW JERUSALEM, INCORPORATED (SWEDENBORGIAN), and BOSTONVIEW CORPORATION, <br><br> Defendants. | C.A. No. 04 10419 WGY |

**PLAINTIFF, GEORGE CHAPIN'S, MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS BY THE BOSTON
SOCIETY OF THE NEW JERUSALEM, INCORPORATED
(SWEDENBORGIAN) AND BOSTONVIEW CORPORATION**

Pursuant to Fed. R. Civ. P. 26 and 37(a) and Local Rules 7.1 and 37.1, Plaintiff, George Chapin, hereby moves to compel the production of documents by Boston Society of the New Jerusalem, Incorporated (Swedenborgian) (the "Church") and Bostonview Corporation ("Bostonview"). Briefly stated, this motion should be allowed because the Church and Bostonview are refusing to produce documents that are indisputably subject to production. Furthermore, Defendants possess the protection of a confidentiality order which precludes disclosure by Mr. Chapin of the documents produced. Finally, because the parties have agreed to complete discovery by July 7, 2004, it is imperative that the documents be produced as soon as possible.

# BACKGROUND

Since its creation in 1818, the Church has been affiliated with the Denomination.[1] Complaint, ¶¶ 18, 20.[2]  With the assistance of the Denomination, Reverend G. Steven Ellis ("Reverend Ellis") became the Church's Pastor in 1982.  During his pastorship, Reverend Ellis' behavior changed considerably and detrimentally.  He became, apparently, a manic depressive. As a result, his services as Pastor became ineffective.  Complaint, ¶ 28-29.

In 2002, Thomas Kennedy, a new Church member with an unfavorable and apparently undisclosed background, observed the mental instability of Reverend Ellis.[3]  Kennedy befriended Reverend Ellis only to later take advantage of him.  After befriending Reverend Ellis, Kennedy asked that he become president of the Massachusetts New Church Union (the "Union").  The Union is a non-profit corporation which holds the assets of the Massachusetts Association of the New Jerusalem (Swedenborgian) (the "Association").  Those assets included more than $1 million in cash and two properties located at 79 Newbury Street, Boston, Massachusetts, and in Duxbury, Massachusetts.[4]  As President, Kennedy believed that he could siphon assets from that entity.  Complaint, ¶¶ 32-36.

---

[1] Throughout its history, the Church has obtained a variety of benefits from the Denomination such as financial assistance for ministerial salary when needed; itinerant ministerial services when the Church was without a resident pastor; teaching aids and methodologies for child and adult religious education programs; involvement in denominational youth programs; funding for projects of outreach and publication; retirement benefit(s) for minister(s) in the Church's employ; regular communication and information from the network of the Denomination's societies and centers in North America; and voting privileges in the ongoing work of the Denomination.  It has used the services of the Denomination to obtain ministers; to obtain the services of trained consultants in the areas of stewardship, board training and process, and outreach programs; and it has relied on Denominational services to assist in establishing interim pastoral positions as needed.  Complaint, ¶ 9.

[2] The Church's stated purpose is to establish and maintain public worship of the Lord Jesus Christ according to His Holy Word and the teaching of the Church which He has revealed in the theological writings of Emanuel Swedenborg.  Complaint, ¶ 19.

[3] Kennedy has a history of unfavorable, if not criminal, behavior.  Upon information and belief, Kennedy had engaged in fraudulent loan transactions.  He also no longer maintained his job in the area of finance at the MBTA. Complaint, ¶ 31.

[4] The Association consisted of six churches, which then included the Church.  Complaint, ¶ 10.

Reverend Ellis, through his position in the Association, had Kennedy elected President of the Union. Kennedy then utilized that position only for his own personal financial benefit. Without authorization or justification, he attempted to transfer approximately $1 million in Union funds to an account over which only he had the power of withdrawal. Complaint, ¶ 39. See Ex. B. The Union prevented the transfer. Complaint, ¶ 40.

Most important is that during his time as President, Kennedy recruited Edward MacKenzie to assist in dissipating the assets of the Union. MacKenzie was a self professed "enforcer" for Whitey Bulger in the 1980s. He was convicted and has served time in prison for trafficking cocaine. MacKenzie has detailed his criminal behavior in a recently published book, "Street Soldier: My Life as an Enforcer for Whitey Bulger and the Boston Irish Mob." At an engagement concerning the book, MacKenzie stated that his demonic and criminal personality would never change. He also stated that he has never felt any remorse for his criminal activities, which included savage beatings, eating an individual's finger and other violent activities. Complaint, ¶¶ 52-58.

MacKenzie's fraud continues. For example, he reportedly swindled an elderly woman out of more than $20,000 in 2001 by claiming that he would locate her son who had disappeared. Complaint, ¶ 57, Ex. D. He also reportedly received more than $30,000 in fraudulent workers' compensation payments in 2001 based on a fabricated disability. Complaint, ¶ 58, Ex. E.

MacKenzie's participation accelerated the misappropriation of Union assets. MacKenzie and Kennedy moved into the Union's property at 79 Newbury Street. They used Union funds to purchase furniture, computers and telephones for their personal use. Kennedy hired his children to perform a totally unsatisfactory painting job. They also misappropriated as much as $14,000

from the Union.  Complaint, ¶¶ 43-47.  Kennedy had also made hundreds of personal long-distance telephone calls at the Union's expense.  Complaint, ¶ 38, Ex. A.

The Union learned of MacKenzie's and Kennedy's activities.  It then scheduled a meeting in which it would disclose Kennedy's activities and then dismiss him.  Kennedy resigned to avoid the public disclosure of his misdealings during his term as President.  Complaint, ¶¶ 48-49.

### MacKenzie and Kennedy Take Actions Needed To Control The Church and Its $30 Million Apartment House and to Misappropriate Church Assets

In or about November and December, 2002, MacKenzie and Kennedy also began to focus their attention on the Church.  MacKenzie, who also recognized Reverend Ellis' mental instability, undertook efforts to befriend and then control him.  Complaint, ¶¶ 59-60.  MacKenzie did so by spending time with the Pastor on a daily basis.

After obtaining Reverend Ellis' trust, MacKenzie then carried out his fraudulent takeover of the Church.  Initially, he intimidated members of the Church's Board of Trustees and the Church Council.[5]  For example, he forced the Trustees to fund tuition associated with MacKenzie's daughter's attendance at a private secondary school.  Never had such an expenditure been approved.  Only college tuition had been reimbursed.  MacKenzie obtained the funding by standing directly behind the Chairman of the Trustees at the time of the vote and indicating that the tuition should be approved.  MacKenzie and Kennedy also caused Reverend Ellis to pay them as much as $25,000 from the Church's relief fund.  Such a practice had never occurred in the past.  Complaint, ¶¶ 61-63.

Through the above and other activities, MacKenzie quickly communicated that he is a person with whom people should not disagree.  He used this fear and intimidation to coerce the

---

[5] The Church's Board of Trustees manages the financial and other activities of the Church.  The Church Council controls membership and other activities.  Members of both bodies are comprised of Church members.  Complaint, ¶¶ 24-25, 53, Ex. C, Art. IX.

Trustees and the Church Council to approve certain items never before approved. MacKenzie's control of Reverend Ellis prevented any objection by him. Complaint, ¶¶ 65-69.

One such item concerned the admission of new Church members. The Church requires votes from a majority of the membership to approve various actions. To obtain control over a majority of members, MacKenzie and Kennedy sought to admit as Church members family members and friends. Many of these individuals had never even visited the Church. They had never been confirmed into the Swedenborgian faith as is required by the Church's by-laws. Complaint, ¶¶ 64-74, Ex. C, Art. IV, Sec. 3. Many did not even attend the meeting in which MacKenzie sought to have them elected as Church members. They had no interest in the Church. Despite the foregoing, MacKenzie used fear and intimidation to force the Church Council and the Church Membership to admit these individuals as members. After their admission, he then controlled a majority of the voting members. Complaint, ¶¶ 64-66, 74.

MacKenzie then used that majority vote to obtain control of the Church's Board of Trustees. At an annual May meeting of Church members, MacKenzie proposed that he and others be elected as Trustees in place of those nominated by the Nominating Committee, who included Robert Buchanan, Joan Buchanan and John Perry. MacKenzie used his control over new members and extortion to fix the outcome of the votes at the May, 2003, meeting. Complaint, ¶¶ 75-79.

He instructed his and Kennedy's family members and friends how to vote. He caused Reverend Ellis to distribute and endorse an alternate slate of officers, knowing that many of the members would not want to vote against Reverend Ellis' position. They voted as directed. He prevented individuals from speaking in opposition to his nominees. He also extorted the votes of elderly members of the Church. He indicated that not voting in favor of each item would cause

them to lose benefits from the Church or would otherwise be detrimental to them. Many of these individuals also voted in favor of electing MacKenzie, Kennedy and others. In doing so, they voted to abandon Robert Buchanan, Joan Buchanan and John Perry who had served as Trustees for numerous years. Complaint, ¶¶ 75-80. The Members also voted in favor of electing MacKenzie, a convicted felon, as Treasurer. Complaint, ¶ 80.

The positions as Trustee and Treasurer could not become effective until September 1, 2003. Not surprisingly, on September 2, 2003, MacKenzie and Kennedy approached the Church's Bank seeking payment of $10,000 in checks payable to them. Because the Bank did not understand that MacKenzie acted as Treasurer, it refused to cash the checks. Complaint, ¶ 83. MacKenzie and Kennedy later obtained payment of $10,000 from the Church. No justification existed for the payment. Complaint, ¶ 84, Ex. H.

MacKenzie scheduled another meeting to be held on September 21, 2003, as to voting for the directors of Bostonview, the entity which owned the apartment house. He again arranged for his and Kennedy's family members and friends to vote for the removal of existing Directors and the appointment of MacKenzie, Kennedy and others as new directors. He extorted the votes of elderly members as well. Complaint, ¶¶ 84-88. In furtherance of their plan, MacKenzie and Kennedy caused Edwards & Angell, LLP to forward a letter to the property manager on September 23, 2003, setting forth the members of the board of directors. Complaint, ¶ 89, Ex. J.

### The Denomination Investigates Reverend Ellis

As a result of MacKenzie's actions up to May, 2003, several Church Members asked the Denomination to conduct an investigation as to the practices of Reverend Ellis. Complaint, ¶ 91, Ex. K. At the Denomination's interview of Reverend Ellis, MacKenzie and Kennedy acted as his spokesmen. They limited his responses and controlled the interview. Complaint, ¶¶ 92-93.

6

After completion of the investigation, and, upon information and belief, the review of all activities occurring after May, 2003, the Denomination presented Reverend Ellis with three options: (1) he could be closely supervised for six months; (2) he could be suspended for one year; or (3) he could have his credentials as a Swedenborgian minister revoked. MacKenzie could not accept any of the options as to Reverend Ellis. To do so would require him to lose control of Reverend Ellis, whom he needed to maintain his control of the Church. Complaint, ¶¶ 94-95.

At or about this time, the Association's Executive Committee also failed to recognize the expulsion of members by MacKenzie's Church. Complaint, ¶ 96, Ex. L. The Association also intended not to recognize newly-admitted members to the Church. Those actions would also be difficult for MacKenzie and Kennedy to manage. He and Kennedy needed these votes to control the majority vote of the Membership. They did not need an investigation as to whether the memberships were valid, which they were not. Accordingly, MacKenzie and Kennedy directed Edwards & Angell, LLP to send two letters to the Association in an attempt to frustrate their resolution. Complaint, ¶¶ 97-98, Exs. M & N. The first letter attempted to avoid the production of information. Complaint, ¶ 97, Ex. M. The second letter attempted to follow the language of the resolution in an effort to avoid an investigation as to the expulsion of members. Complaint, ¶ 98, Ex. N.

### The Church Disaffiliates Itself From the Denomination

Fearing that the Denomination's order would become effective, MacKenzie and Kennedy forced the Church Membership to vote in favor of disaffiliation from the Denomination. MacKenzie's and Kennedy's family members and friends voted as directed. MacKenzie and Kennedy then misrepresented to the remaining members the reason for the vote. They did not disclose that continued affiliation with the Denomination would foil their plan to continue to

control the Church and its apartment house. They also did not address Reverend Ellis' mental incapacity. Instead, they portrayed the vote as one needed to save Reverend Ellis from what they asserted were wrongful actions of the Denomination. Many of the remaining Church members then voted in favor of disaffiliation. Complaint, ¶¶ 101-102. By letters dated October 26, 2003, to the Denomination and the Association, MacKenzie and Kennedy furthered their fraudulent scheme by causing the Church to communicate its disassociation to the Denomination and the Association. Complaint, ¶ 103, Exs. O & P.

**MacKenzie and Kennedy Now**
**Operate Businesses From Church Offices**

Since obtaining control of the Church, MacKenzie and Kennedy have moved businesses in which they have an interest into the offices of the Church. These businesses are not affiliated with the Church. Operating the businesses from the Church's offices simply permits MacKenzie and Kennedy to avoid the costs associated with the salary of a secretary, office expenses, telephone and fax charges and other expenses that they would otherwise incur operating the businesses from other locations. Complaint, ¶¶ 107-110. MacKenzie and Kennedy continue to operate those businesses.

MacKenzie and Kennedy have also caused John Burke to join the Church. He is a real estate "broker" who, upon information and belief, had previously worked for Whitey Bulger. He will assist MacKenzie and Kennedy in connection with the sale of the apartments as condominiums. Complaint, ¶ 109.

**Refusal to Respond to Discovery Requests**

To obtain information concerning the above and other potentially relevant and related actions, Mr. Chapin served a Request for the Production of Documents. The Church and Bostonview, however, have refused to produce the wealth of responsive documents.

8

## ARGUMENT

**A.    Standard.**

Pursuant to Fed. R. Civ. P. 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Fed. R. Civ. P. 26(b)(1). " [T]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Thus, on a motion to compel, the moving party is required to show only "that the information sought . . . 'is relevant to the <u>subject matter involved in the pending action.</u>" *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984) (quoting Fed. R. Civ. P. 26(b)(1))(emphasis added). Here, the Plaintiff's document requests seek information that is clearly relevant to the claims and defenses at issue in this case. Moreover, these requests are extremely likely to lead to the discovery of additional admissible evidence.

**B.    The Church's and Bostonview's Refusal to Respond to Document Requests.**

To assemble and discover critical data regarding his claim, Mr. Chapin served document requests on the Church and Bostonview (the "Requests"). <u>See</u> Ex. A. As discussed below, Defendants have refused to produce numerous responsive non-privileged documents without any excuses or jurisdiction.

**1.    Request Nos. 1 Through 10.**

In these Requests, Mr. Chapin seeks the production of documents concerning disbursements of funds and other financial information. The Requests seek:

> 1.    All documents which evidence expenses and revenue of the Church and/or Bostonview since January 1, 1999.

2.     All documents which evidence the disbursement of any funds from the Church or Bostonview to any individuals or entity since January 1, 1999.

3.     All statements regarding the Church's checking account(s) since January 1, 1999.

4.     All statements regarding the Church's savings account(s) since January 1, 1999.

5.     All statements regarding the Church's other financial account(s) since January 1, 1999.

6.     All cancelled checks of the Church since January 1, 1999.

7.     All statements regarding the Bostonview's checking account(s) since January 1, 1999.

8.     All statements regarding the Bostonview's savings account(s) since January 1, 1999.

9.     All statements regarding the Bostonview's other financial account(s) since January 1, 1999.

10.     All cancelled checks of the Bostonview since January 1, 1999.

The Church and Bostonview have wrongfully limited production to only information concerning payments to Edward MacKenzie, Thomas Kennedy or their relatives. Documents not produced, however, may lead to the discovery of admissible evidence. Prior financial records will demonstrate if payment methods have changed considerably since MacKenzie and Kennedy infiltrated the Church. They will also indicate if amounts have been paid inappropriately to other Church officers, their relatives and to other Church members. (Mr. Chapin understands that this has occurred.) This information will also assist in establishing that MacKenzie and Kennedy utilized inappropriate payment methods and that they may have paid amounts to individuals with criminal backgrounds who have no legitimate interest in the Church. The above information is relevant to establishing breaches of fiduciary duty and, with respect to Mr. Chapin's RICO claims, the existence of a fraudulent scheme to be carried out by an enterprise.

### 2.    Request No. 11.

This Request seeks:

      11.    All minutes of trustee, church council, membership or other Church meetings conducted since 1995.

The Church and Bostonview have wrongfully limited production of records and documents concerning only members of the Church and its withdrawal from the Denomination. The requested information, however, will demonstrate the actions that MacKenzie and Kennedy have taken as to the Church.   Such information could (and most likely will) demonstrate wrongful conduct.  Production of earlier minutes is needed to demonstrate that current practices are not only inconsistent, but wrongful.

### 3.    Request No. 12.

This Request seeks:

      12.    All documents constituting or concerning correspondence sent to and from the Church since May 2001.

The Church and Bostonview have wrongfully limited production of records and documents concerning any members of the Church and its withdrawal from the Denomination. Mr. Chapin has alleged a RICO claim contending that MacKenzie and Kennedy engaged in mail fraud.  Correspondence forwarded by them through the Church, their attorneys or otherwise is needed to prove this claim.

### 4.    Request Nos. 13 Through 15.

These Requests seek:

      13.    All memoranda or other documents created since January 1, 1999 referring to, concerning or addressing any Church member.

      14.    All memoranda or other documents which refer to, concern or address any issues as to the Church or its members.

    15.    All documents evidencing, referring to, mentioning or concerning the confirmation of any Church members.

The Church and Bostonview have wrongfully limited production of records and documents concerning any members of the Church and its withdrawal from the Denomination.[6] Responsive documents are obviously relevant to Mr. Chapin's claim that the Church wrongfully admitted members to the Church. Mr. Chapin contends that members had not been confirmed and had no prior affiliation with the Church. Documents created prior to January 1, 2002 will demonstrate that all new members admitted prior to that date were confirmed prior to obtaining membership as a prerequisite. They will also demonstrate that these members had an affiliation with the Church prior to their admission.

    **5.**    **Request No. 16.**

This Request seeks:

    16.    All memoranda or other documents which refer to, concern or address any issues as to Bostonview.

The Church and Bostonview have wrongfully limited their production only to documents concerning the conversion of Bostonview apartments to condominiums. Issues relating to Bostonview are relevant, however, to actions taken by MacKenzie and Kennedy as to this entity. They are now directors. They transferred $850,000 in funds obtained from Bostonview to an unrelated entity, Harborview Real Estate Corporation ("Harborview"). See Ex. B. Mr. Chapin requires records relating to Bostonview to discover more information as to these issues and to learn if MacKenzie and Kennedy have engaged in other inappropriate behavior, which could include mail fraud. For the convenience of the parties, Mr. Chapin is willing to limit this request to documents created on or after January 1, 1995.

---

[6] With respect to Request 15, the Church and Bostonview believe that there are no additional responsive documents to produce.

### 6.      Request Nos. 17, 18 and 19.

These Requests seek:

17.      All documents which refer to, concern or address any issues as to the Church's affiliation with the Denomination.

18.      All documents which refer to, concern or address any issues as to the Denomination.

19.      All documents which refer to, concern or address any issues as to the Association.

The Church and Bostonview have wrongfully limited their production to documents concerning only the Church's withdrawal from the Denomination.[7]  Documents relevant to the Church's affiliation with the Denomination and the Denomination itself are relevant as to establishing that no legitimate reason to withdraw from the Denomination existed.  MacKenzie and Kennedy orchestrated the withdrawal only to further their efforts to control the Church for their own financial benefit by the misappropriation of the funds.

### 7.      Request No. 23.

This Request seeks:

23.      All records, including transcripts, of any directors or other meeting of Bostonview.

The Church and Bostonview have wrongfully limited production of records and documents concerning only members of the Church, its withdrawal from the Denomination, the disposition of the apartment house or converting its units to condominiums.  The requested information, however, will indicate the actions that MacKenzie and Kennedy have taken as to the Church.  Such information could (and most likely will) demonstrate wrongful conduct.  Production of earlier minutes is needed to demonstrate that current practices are not only inconsistent, but wrongful.

---

[7] With respect to Request 17, the Church and Bostonview believe that there are no additional responsive documents to produce.

**8.**    **Request No. 24.**

This Request seeks:

24.    All newsletters or other document concerning activities of the Church since January 1, 1999.

The Church and Bostonview have wrongfully limited their production to documents produced on or after January 1, 2002. Prior newsletters or other related documents are required to show that newsletters authorized by MacKenzie and Kennedy were merely vehicles to falsely promote their activities. This information is relevant to establish breaches of fiduciary duty and, with respect to Mr. Chapin's RICO claim, using the Church to further a fraudulent scheme of control and misappropriation.

**9.**    **Request No. 25.**

This Request seeks:

25.    All documents which evidence or constitute Church by-laws or any alleged amendments thereto.

The Church and Bostonview have wrongfully limited their production to documents "in effect" after January 1, 2002. Documents created prior to that date are relevant to assessing the changes to the by-laws and the reasons for those changes. That information will be compared to information as to why the Church tried to amend its by-laws after it withdrew from the Denomination. The requested documents are also relevant to the procedures needed to amend the by-laws and whether the Church followed those procedures after its withdrawal.

## CONCLUSION

For the reasons set forth above, Plaintiff, George Chapin's, Motion to Compel the Production of Documents by the Boston Society of the New Jerusalem, Incorporated (Swedenborgian) and Bostonview Corporation, should be allowed and the Defendants should be ordered to produce all responsive documents within seven (7) days from the date of the deposition of this Motion.

THE GENERAL CONVENTION OF THE NEW JERUSALEM IN THE UNITED STATES OF AMERICA, INC., THE MASSACHUSETTS ASSOCIATION OF THE NEW JERUSALEM (SWEDENBORGIAN), and GEORGE CHAPIN

By their attorneys,


/s/ Damon P. Hart
Geoffrey E. Hobart (BBO No. 547499)
Christopher J. Trombetta (BBO No. 556923)
Damon P. Hart (BBO No. 644586)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated: May 28, 2004

### CERTIFICATE OF COMPLIANCE WITH L.R. 7.1 AND 37.1

I hereby certify that, prior to filing this motion, I conferred by telephone with Richard J. McCarthy, counsel for Boston Society of the New Jerusalem, Incorporated and Bostonview Corporation, on May 24, 2004, in an effort to resolve the issues raised by this motion without the need for intervention by this Court. Those efforts were not successful.

/s/ Christopher J. Trombetta
Christopher J. Trombetta

**EXHIBIT A**

**BOSTONVIEW CORPORATION AND THE BOSTON SOCIETY OF THE NEW JERUSALEM, INC.'S RESPONSES TO PLAINTIFF GEORGE CHAPIN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE GENERAL CONVENTION OF THE
NEW JERUSALEM IN THE UNITED
STATES OF AMERICA, INC., THE
MASSACHUSETTS ASSOCIATION OF
THE NEW JERUSALEM
(SWEDENBORGIAN), and GEORGE
CHAPIN,

         Plaintiffs,

v.                                                                    C.A. No. 04-10419-WGY

EDWARD MACKENZIE, THOMAS
KENNEDY, BOSTON SOCIETY OF THE
NEW JERUSALEM, INCORPORATED
(SWEDENBORGIAN), and BOSTONVIEW
CORPORATION,

         Defendants.

## BOSTONVIEW CORPORATION AND THE BOSTON SOCIETY OF THE NEW JERUSALEM, INC.'S RESPONSES TO PLAINTIFF GEORGE CHAPIN'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Boston Society of the New Jerusalem, Inc. and Bostonview Corporation, by their

attorneys and pursuant to Fed. R. Civ. P. 34, hereby respond and object to Plaintiff George

Chapin's First Request for Production of Documents (the "Requests"), as follows.

## GENERAL OBJECTIONS

1.     Defendants object to the production of responsive documents at the offices of

Holland & Knight, 10 St. James Avenue, Boston, Massachusetts, but, subject to the objections

stated herein, will make responsive documents available for inspection and copying at the offices

of defendants' counsel, Edwards & Angell, LLP, 101 Federal Street, Boston, Massachusetts.

2.      Defendants object to the Requests to the extent that they seek documents for the period prior to January 1, 2002 because the allegations in the Complaint pertain to conduct and events that occurred no earlier than sometime during 2002.  To the extent the Requests seek documents for the period prior to January 1, 2002, they are overly broad and unduly burdensome, seeking information which is not relevant to the claim or defense of any party, and is not reasonably calculated to lead to the discovery of admissible evidence.

3.      Defendants object to the production of documents which contain confidential Church business, financial, and membership information and are subject to Mass. Gen. Law ch. 12, § 8H without an agreement or protective order limiting the use of all such documents for the purposes of the above-entitled action only, and providing for the return of all such documents at the conclusion of the above-entitled action.  Also, if the Plaintiffs are to act as if private attorneys general, they should be subject to the same confidentiality restrictions as are imposed by statute (Mass. Gen. L. ch. 12, § 8H) on investigations of public charities by the Attorney General.

4.      Defendants object to the production of documents until after plaintiffs have satisfied their automatic disclosure requirements under Rule Fed. R. Civ. P. 26(1).

5.      Defendants object to the Plaintiff's "Definitions and Instructions" to the extent that they exceed the requirements of the Federal Rules of Civil Procedure and the local rules of the United States District Court for the District of Massachusetts.  Further, Defendants object to the requests to the extent that they seek confidential privileged attorney-client communications or attorney-work product.

BOS_442730_1/RMCCARTHY

6.      Defendants object to the definition of "Church" to mean Boston Society of the New Jerusalem Incorporated (Swedenborgian) as there is no such legal entity.  The only legal entity is Boston Society of the New Jerusalem, Inc.

7.      Defendants object to the definition of "concerning" as it does not comply with Local Rule 26.5 Uniform Definitions in Discovery Requests.

## REQUESTS

### REQUEST NO. 1

All documents which evidence expenses and revenue of the Church and/or Bostonview since January 1, 1999.

### RESPONSE TO REQUEST NO. 1

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 1 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome.  Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce documents which evidence expenses and revenue of the Church and/or Bostonview pertaining to MacKenzie and Kennedy.

### REQUEST NO. 2

All documents which evidence the disbursement of any funds from the Church or Bostonview to any individuals or entity since January 1, 1999.

### RESPONSE TO REQUEST NO. 2

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 2 because it seeks information that is not relevant to the

BOS_442730_1/RMCCARTHY

claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objection, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce documents which evidence any disbursement of any funds from the Church and/or Bostonview pertaining to MacKenzie and Kennedy.

**REQUEST NO. 3**

All statements regarding the Church's checking account(s) since January 1, 1999.

**RESPONSE TO REQUEST NO. 3**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 3 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3, Defendants will produce documents which are MacKenzie and Kennedy related checks.

**REQUEST NO. 4**

All statements regarding the Church's savings account(s) since January 1, 1999.

**RESPONSE TO REQUEST NO. 4**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 4 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will

produce documents which evidence any MacKenzie and Kennedy related savings account transactions.

**REQUEST NO. 5**

    All statements regarding the Church's financial account(s) since January 1, 1999.

**RESPONSE TO REQUEST NO. 5**

    In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 5 because it seeks information that is not relevant to the claim or defense of any party is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome.  Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce financial statements which evidence any MacKenzie and Kennedy related transactions.

**REQUEST NO. 6**

    All cancelled checks of the Church since January 1, 1999.

**RESPONSE TO REQUEST NO. 6**

    In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 6 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome.  Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce cancelled checks that are MacKenzie and Kennedy related.

**REQUEST NO. 7**

    All statements regarding the Bostonview's checking account(s) since January 1, 1999.

BOS_442730_1/RMCCARTHY

**RESPONSE TO REQUEST NO. 7**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 7 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3, Defendants will produce documents which evidence payments after January 2, 2002 that are MacKenzie and Kennedy related.

**REQUEST NO. 8**

All statements regarding the Bostonview's savings account(s) since January 1, 1999.

**RESPONSE TO REQUEST NO. 8**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 8 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3, Defendants will produce documents which evidence deposits or withdrawals after January 1, 2002 that are MacKenzie and Kennedy related.

**REQUEST NO. 9**

All statements regarding the Bostonview's other financial account(s) since January 1, 1999.

- 6 -

**RESPONSE TO REQUEST NO. 9**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 9 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3, Defendants will produce other Bostonview financial account documents which evidence MacKenzie and Kennedy related transactions.

**REQUEST NO. 10**

All cancelled checks of the Bostonview since January 1, 1999.

**RESPONSE TO REQUEST NO. 10**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 10 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3, Defendants will produce Bostonview cancelled checks which are MacKenzie and Kennedy related.

**REQUEST NO. 11**

All minutes of trustee, church council, membership or other Church meetings conducted since 1995.

**RESPONSE TO REQUEST NO. 11**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 11 because it seeks information that is not relevant to the

- 7 -

claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly board and unduly burdensome.  Notwithstanding the foregoing objections, and without wavier thereof, upon satisfaction of General Objection No. 3, Defendants will produce the requested documents for the period after January 1, 2002 to the extent they discuss the admission of new members or the withdrawal of the Church from the General Convention of the New Jerusalem in the United States of America, Inc. (the "General Convention").

## REQUEST NO. 12

All documents constituting or concerning correspondence sent to and from the Church since May, 2001.

## RESPONSE TO REQUEST NO. 12

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 12 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome.  Notwithstanding the foregoing objections, and without wavier thereof, upon satisfaction of General Objection No. 3, Defendants will produce correspondence for the period after January 1, 2002 to the extent that it discusses the admission of new members or the withdrawal of the Church from the General Convention.

## REQUEST NO. 13

All memoranda or other documents created since January 1, 1999 referring to, concerning or addressing any Church member.

## RESPONSE TO REQUEST NO. 13

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 13 because it seeks information that is not relevant to the

BOS_442730_1/RMCCARTHY

claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections and General Objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce memoranda created since January 1, 2002 to the extent that they discuss the admission of new members or the withdrawal of the Church from the General Convention.

**REQUEST NO. 14**

All memoranda or other documents which refer to, concern or address any issues as to the Church or its members.

**RESPONSE TO REQUEST NO. 14**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 14 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections and General Objections, and without wavier thereof, upon satisfaction of General Objection No. 3 Defendants will produce memoranda created since January 1, 2002 to the extent that they discuss the admission of the new members or the withdrawal of the Church from the General Convention.

**REQUEST NO. 15**

All documents evidencing, referring to, mentioning or concerning the confirmation of Church members.

**RESPONSE TO REQUEST NO. 15**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 15 because it seeks information that is not relevant to the

claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and is unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce documents referring to, describing, evidencing, or constituting the confirmation of any Church member after January 1, 2002.

### REQUEST NO. 16

All memoranda or other documents which refer to, concern or address any issues as to Bostonview.

### RESPONSE TO REQUEST NO. 16

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 16 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce any documents that may exist concerning the potential conversion of the Bostonview apartments to condominiums.

### REQUEST NO. 17

All documents which refer to, concern or address any issues as to the Church's affiliation with the Denomination.

### RESPONSE TO REQUEST NO. 17

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 17 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible

BOS_442730_1/RMCCARTHY

evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce documents concerning any issues as to the Church's withdrawal from the General Convention.

**REQUEST NO. 18**

All documents which refer to, concern or address any issues as to the Denomination.

**RESPONSE TO REQUEST NO. 18**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 18 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3, Defendants will produce documents concerning any issues as to the Church's withdrawal from the General Convention.

**REQUEST NO. 19**

All document which refer to, concern or address any issues as to the Association.

**RESPONSE TO REQUEST NO. 19**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 18 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and is unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will

BOS_442730_1/RMCCARTHY

produce documents which evidence or discuss MacKenzie-related and Kennedy-related issues with the Association.

**REQUEST NO. 20**

All notices or other documents serving as notice of any trustee, Church council, membership or other meeting of the Church since January 1, 1999.

**RESPONSE TO REQUEST NO. 20**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 20 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce all documents noticing any trustee, Church council, membership or other such meeting of the Church since January 1, 2002.

**REQUEST NO. 21**

All notices or other documents serving as notice of any directors or other meeting of Bostonview since January 1, 1999.

**RESPONSE TO REQUEST NO. 21**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 21 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce all documents noticing any Bostonview directors meeting after January 1, 2002.

BOS_442730_1/RMCCARTHY

**REQUEST NO. 22**

All records, including transcripts, of any trustee, Church council, membership or other meeting of the Church.

**RESPONSE TO REQUEST NO. 22**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 22 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce minutes and transcripts of any Church Trustees, Church council, and Church members meetings after January 1, 2002.

**REQUEST NO. 23**

All records, including transcripts, of any directors or other meeting of Bostonview.

**RESPONSE TO REQUEST NO. 23**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 23 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad unduly burdensome. Notwithstanding the foregoing, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce any minutes and transcripts of any Bostonview directors meeting after January 1, 2002, concerning the potential conversion of the Bostonview apartments to condominiums.

**REQUEST NO. 24**

All newsletters or other documents concerning activities of the Church since January 1, 1999.

**RESPONSE TO REQUEST NO. 24**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 24 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing objections, and without waiver thereof, Defendants will produce any newsletters published by the Church since January 1, 2002.

**REQUEST NO. 25**

All documents which evidence or constitute Church by-laws or any alleged amendments thereto.

**RESPONSE TO REQUEST NO. 25**

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 25 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce the requested documents in effect for the period after January 1, 2002.

**REQUEST NO. 26**

Any documents concerning converting the apartments located at 140 Bowdoin Street into condominiums.

- 14 -

## RESPONSE TO REQUEST NO. 26

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 26 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. Notwithstanding the foregoing, and without waiver thereof, upon satisfaction of General Objection No. 3 Defendants will produce any documents that may exist concerning converting the apartments located at 140 Bowdoin Street, Boston, Massachusetts, into condominiums.

## REQUEST NO. 27

All documents evidencing any correspondence (either sent or received) with the offices of the Attorney General of Massachusetts.

## RESPONSE TO REQUEST NO. 27

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 27 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. The authority of the Attorney General and the scope of the matters dealt with between the Attorney General and the Church greatly exceed the issues in this litigation, are confidential and have been conducted for the purposes of investigation and compromise. Further, all documents produced to the Attorney General, and all information provided to the Attorney General, are protected from disclosure to any person other than the Attorney General by Mass. Gen. L. ch. 12, § 8H.

## REQUEST NO. 28

All other documents which concern the actions of the Office of the Attorney General of Massachusetts.

## RESPONSE TO REQUEST NO. 28

In addition to its General Objections, which are incorporated herein by reference, Defendants also object to Request No. 28 because it seeks information that is not relevant to the claim or defense of any party, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad and unduly burdensome. The authority of the Attorney General and the scope of the actions taken by the Attorney General with respect to the Church greatly exceed the issues in this litigation, have been done for the purpose of investigation and compromise, and have been conducted and taken in confidence pursuant to the unique authority of the Attorney General and the statutory requirements, including those as to confidentiality, of Mass. Gen. L. ch. 12, §8H.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 4/22/04

BOSTON SOCIETY OF THE NEW
JERUSALEM, INCORPORATED and
BOSTONVIEW CORPORATION
    Defendants,

By their attorneys,

Richard J. McCarthy (BBO #328600)
Brian H. Lamkin (BBO #635688)
EDWARDS & ANGELL LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

**EXHIBIT B**


**BOSTON GLOBE ARTICLE, MARCH 14, 2004**
**"A TINY CHURCH, A POT OF GOLD, AN EX-CON SPARK**
**A BITTER FEUD"**

# Boston Sunday Globe

### MARCH 14, 2004

CHURCH, Page A22

*'A lot of these people can't even spell Swedenborgian, let alone know what it means.'*

GEORGE CHAPIN, *church stalwart*

# A tiny church, a pot of gold, an ex-con spark a bitter feud



GLOBE STAFF PHOTO/JOHN TLUMACKI

**Eddie MacKenzie (left) with the Rev. G. Steven Ellis at the New Jerusalem Church on Bowdoin Street.**

By Kevin Cullen
GLOBE STAFF

There are many places you would expect to find a South Boston hoodlum like Eddie MacKenzie on a Sunday morning, but the pulpit of the Swedenborgian Church on Beacon Hill is not one of them.

Still, there he was one recent Sunday, standing before the congregation, championing the right of this 186-year-old church to secede from the national organization of this tiny Christian sect.

"There is a renewed spirit of freedom and independence in our church," MacKenzie told the 50 or so worshipers. "We need to truly believe we are God's disciples. . . . We are filled with a revolutionary energy and spirit."

As if on cue, the choir broke into "Yankee Doodle Dandy."

Not that everyone in the pews felt like singing along. George Chapin, a church stalwart for half a century, remembers watching MacKenzie, dumbfounded, and thinking, *"What the hell is going on here?"*

Edward J. MacKenzie Jr. is a man of parts — many parts.

A convicted drug dealer, he is the author of a maim-and-tell memoir about his years as a legbreaker for South Boston gangland leader Whitey Bulger.

He has been, as he describes himself, a man almost irresistibly drawn to cons and scams. He recently admitted to filing phony worker's compensation claims and is awaiting trial on charges of swindling $200,000 from an elderly woman. And he faces charges in another court that he threatened to kill his ex-wife by chaining a cinderblock to her leg and throwing her off a bridge.

He is, in short, a busy man.

But he finds time for church. Indeed, within months of joining, he became part of a new leadership circle that is shaking the rafters at Boston's Swedenborgian church — and raising doubts among some about how the church's wealth is being spent.

A22   City & Region

BOSTON SUNDAY GLOBE

MARCH 14, 2004

# On Beacon Hill, a church divided

▶ CHURCH
*Continued from Page A1*

Upfront about his prolific rap sheet, MacKenzie has won an ally in the church's longtime pastor, the Rev. G. Steven Ellis, who sees him as a man who turned his back on crime, a sinner seeking spiritual sanctuary. Ellis, a Bible scholar who has been pastor of the Boston church for 23 years, has sided with MacKenzie against church elders, who are skeptical of MacKenzie's conversion and worried about his motives.

Ellis did more than take MacKenzie's side. He nominated him for church treasurer, pushing aside his own mother-in-law.

And so in September, MacKenzie took office. It seemed like a very suspicious move.

For while the Bowdoin Street church is poor in members, it is rich by any other measure — and may soon become much richer. The church owns an 18-story apartment building above its chapel that churns out more than $1 million a year in clear profit, according to an October audit by the church's accountant. And a plan has been floated in Boston real estate circles to convert the building to condominiums, a move that the church estimates could yield as much as $75 million.

The new leaders say they are trying to resenergize a moribund institution, to recruit new members and more aggressively manage church assets. There are already indications, beyond the possible conversion of the building, of a more freewheeling approach to church finances.

The church trustees recently voted to make a $350,000 loan to one of the new church leaders — a loan authorized but apparently not used. A lump sum of $850,000 has been transferred to a real estate company in which MacKenzie and another church leader were founding officers. And church bylaws have been changed to make it easier to sell church property and to remove a ban on church leaders' profiting from such sales.

They are the kinds of changes that deeply unsettle some longtime church members, changes that led the national church to file a civil racketeering lawsuit against the new leadership March 2 in US District Court.

The suit claims the new leaders "have utilized a pattern of racketeering activity to wrongfully take control of a 185-year-old church to obtain dominion over its $30 million apartment house, which now generates more than $1.3 million in annual income." The suit seeks to void the memberships of more than 40 people who joined the church in the last two years, and to transfer the church's assets to the national organization.

"MacKenzie is a criminal," the suit alleges. "He has infiltrated the Church only to access its resources for his own personal benefit."

Chapin, one of the plaintiffs, said many of the new members were rushed into the church, without proper training in Swedenborgianism, to rubberstamp the self-serving agenda of the new leadership.

"A lot of these people can't even spell Swedenborgian, let alone know what it means," he said.

Christine Laitner, the vice president of the national Swedenborgian organization, says her group authorized the Boston law firm of Holland & Knight to file the suit "to protect not just the assets of the Boston church, but the history and the legacy and the purpose behind the establishment of this church."

"What's happened in Boston is a shame," she said.

The Boston church's lawyer, Gerald F. Hendrick of Edwards & Angell, calls the lawsuit meritless, while MacKenzie and other church leaders dismiss it as sour grapes.

"Some of these older members appear to have an ax to grind," Hendrick said.

Word that a man of MacKenzie's reputation would have a hand in deciding how the church spends its wealth has also filtered to the office of Attorney General Thomas F. Reilly. And almost as soon as Reilly's investigators began snooping around the church last November, demanding he financial records, MacKenzie stepped down as treasurer. He is now the church's chief of operations.

With his hangdog eyes and what-me-worry disposition, 45-year-old Eddie MacKenzie seems averse as he contemplates the maelstrom he helped create. He says he'll beat the rap in his upcoming trials. His accusers are lying, he says, and besides, he's got religion. When he was a young thug, selling coke on street corners and roughing up rivals, his horizon stretched no farther than Whitey Bulger and Whitey Hill in Somerville, where Irish mug-ugliest plotted mayhem and formed a gang named after the hill, a gang whose boss was Whitey Bulger. Now MacKenzie sits in a church on Beacon Hill, a new man.



A QUESTIONED LEADER   Former South Boston mob foot soldier Eddie MacKenzie says he was first attracted to Beacon Hill's Swedenborgian church when a friend told him that it paid college tuition for members' children. Now, he insists he has nothing but good intentions for the institution, although he admits that he understands how some people would think ill of him. "For some people, I'm always going to be a scumbag," he says.

"I love this church," he says. "I've kind of found my niche."

## The Church on the Hill

Boston's Swedenborgian church, known legally as the Boston Society of the New Jerusalem, is colloquially the Church on the Hill, is named for the 18th-century Swedish scientist and philosopher Emanuel Swedenborg, who believed that Jesus Christ has already made a second coming, in spirit rather than in person.

Swedenborg's unorthodox analysis of the Bible was denounced as heresy by some mainstream Christians, but it quickly won adherents. Among the tenets of Swedenborgianism is that believers, not God, decide their own afterlife.

"The church is within man," he wrote. Swedenborg died in 1772, at the age of 84, and the first group of Swedenborgians organized themselves in London 15 years later. By the early 1800s, churches were sprouting up in the United States.

The church spread rapidly in an era of spiritual and intellectual awakening. It was at the forefront of what today would be called progressive thinking. In the mid-19th century, the church advocated for co-education. In the 1920s, one of its most prominent members, Helen Keller, led the fight for rights for the disabled. Today, the movement is greatly diminished, though there are affiliated churches in more than 30 countries. There are five Swedenborgian congregations in Massachusetts. Officials at the national office in Newton say there are about 1,800 active Swedenborgians nationwide, down from 2,600 a decade ago.

The Boston congregation, founded in 1818 by a group of Harvard students and



VALUABLE ASSET   The church, known officially as the Boston Society of the New Jerusalem, sits beneath an 18-story apartment building on Bowdoin Street that churns out more than $1 million a year in profit. The new church board is considering selling the building.

alumni, is the fourth oldest, and became what Marguerite Block, a church historian, called "the real center of the New Church" in America. New England has long occupied a special place in the church's history, in part because some of the region's leading intellectuals, from Ralph Waldo Emerson to Henry James, were influenced by Swedenborg's writings. Among the region's most famous Swedenborgians were the poet Robert Frost and a Leominster native named John Chapman, better known as Johnny Appleseed.

The Swedenborgians' first church in Boston, a Gothic cathedral built in 1844 on Bowdoin Street, adjacent to the State House, had seating for more than 1,000. But as the years passed on, so did many of the Brahmins who made up much of the congregation. With numbers down and the oversize church crumbling, the congregation decided in 1966 to tear the edifice down and replace it with an apartment building that housed a small church. The ground-floor chapel has room for about 100; the 145 apartments above would yield, they hoped, sufficient income to sustain the local disciples of Swedenborg for generations to come.

And, as it had for generations, the church on Beacon Hill dispensed its version of Christianity and did its good works in relative obscurity. Whatever was left over from paying the upkeep of the apartment building was used to pay for college educations for members' children and, occasionally, a deserving charity case. But it has the means to do much more. With about 100 members, and a mortgage-free building that real estate appraisers say is worth at least $30 million, the church is surely, per capita, among the wealthiest to

be found.

## A time of turmoil

And so it was, almost two years ago, that Eddie MacKenzie arrived at the Boston church at a time of extraordinary economic opportunity. But it was also a time of unprecedented turmoil, a feud to the church's leading family, in fact.

Ellis, the pastor, had had a bitter falling out with his wife's parents, Bobby and Joan Buchanan, who for more than a decade had been officers in the church. Joan Buchanan was treasurer, and she was generally given high marks by the membership for managing its finances. But in recent years, Ellis and the Buchanans have clashed with increasing frequency over church matters. At the church's annual membership meeting last May, Ellis handed out a flier with the names of church officers he planned to vote for. His in-laws were not on the list, but Eddie MacKenzie was. Later, the Buchanans were expelled from the church.

The Buchanans declined to be interviewed by the Globe. But Ellis said they took their concerns to the church's state and national organizations, saying they worried about his mental stability.

Would any man of good judgment, they wondered, have so swiftly turned over church's leadership over to MacKenzie? Or to Thomas J. Kennedy, a former MBTA auditor who, while never accused of wrongdoing like MacKenzie, was one of MacKenzie's early supporters and became, within a year of joining, the church president?

Some longtime members, like Thomas Peebles, whose family has been in the church since its founding, were similarly distraught at the change in leadership and direction.

"Many of us," said Peebles, a physician and former head of the Harvard Community Health Plan, "are understandably distressed at the hostile takeover by a newly elected and closely knit group of friends and relatives, which include an admitted by criminal element among its leaders."

Last August, the national organization's Misconduct Determination Board took up the Buchanans' cause and sent Ellis a letter saying it was "very concerned about the physical, mental, and spiritual health of Steve Ellis." The board proposed appointing a consultant "from outside the Swedenborgian Church" who could work with Ellis in, among other things, "assuring fiscal propriety."

Ellis, whose three decades in Boston have done little to diminish a downhome drawl from his native Kentucky, looks something like Friar Tuck, with his beard and angular girth. But his demeanor took on a furious edge after he learned that his in-laws and the national and state associations had joined forces against him.

"My integrity and service to the

Church has been defamed," Ellis wrote in his letter of resignation to the national group. "I have been treated worse than a criminal."

At Ellis's prompting, and with MacKenzie's and Kennedy's active lobbying of church members, the church abruptly severed ties with the national organization to which it had been bound since its founding, and quit the state association with which it had been affiliated since 1835.

MacKenzie says the critics of the new church leadership badly miscalculated the membership's loyalty to Ellis.

"They attacked Steve's integrity when they should have attacked me and Tom Kennedy," MacKenzie said. "No one complained when I came into the church and was just serving food or cleaning up. Once they found out I was running for treasurer, I became a legbreaker. It's OK to throw someone like me a bone, but not with any meat on it."

Liberated from the oversight of the national and state associations, Ellis, Kennedy, and MacKenzie set about instituting their church from what Ellis described in an interview as "outside enemies."

Under a new set of church bylaws drawn up in November, it became much easier, and much faster, for new members to join. Ellis was given complete discretion in deciding who would be confirmed and how. Newcomers can now be admitted by a simple majority vote of existing church members; before, a two-thirds vote was required. Required doctrinal training, emphasizing Swedenborg's writings, was eliminated.

Gone, too, was a provision that any sale of church property be approved by two-thirds of members, and one that barred individuals from enriching themselves with church assets. A new provision calls for the expulsion of members deemed unworthy by a simple majority.

There is one other new mandate. Any changes to church property must now "be directed by a Director of Operations."

That would be Eddie MacKenzie.

He says he knows very well what his critics think: that he and a band of cronies are pocketing cash, spending it freely, squirreling it away in new accounts. It is baseless and insulting talk, he says.

"You can't take money here. There are systems in place. I couldn't steal money here even if I wanted to," he says, hesitating slightly before adding, "And I don't want to."

## 'He prays on people'

So how did the New Church and MacKenzie, Swedenborg's and Southie's own, come together?

MacKenzie says he was first attracted to the church when a friend told him that one of its traditional was to pay college tuition

*Continued on next page*



**IT MAKES NO SENSE!** John Perry (with his wife, Anne), a lifelong member of the church who was voted off its board last year, says the sudden change in leadership was rash. "It makes no sense, but it makes cents, in dollars and cents," he says.

Continued from preceding page

tion for members' children. But he says his goal now is to put the church's wealth to work for the disadvantaged, not himself. He said he is doing so well financially, between book sales and what he said is a soon-to-be-finalized movie deal, that he may not even need to ask the church to pay for the college educations of his five daughters.

MacKenzie says he has not read much of Swedenborg but had read enough to appreciate his "genius." He says it was Ellis's charismatic sermons that captured his imagination.

"It was more about him talking about Daniel Boone and Davy Crockett than Emanuel Swedenborg," he said of Ellis's proselytizing.

Ellis says his great-great-great-great-great-grandfather was a close friend of Boone's.

MacKenzie says he did not hide his past from Ellis or anyone else he met at the church.

Ellis bought 50 copies of his book and gave them to church members.

The book, "Street Soldier: My Life as an Enforcer for Whitey Bulger and the Boston Irish Mob," is an account of MacKenzie's disadvantaged childhood and life of crime. In it, he gleefully describes the pleasure he took in mayhem, including swallowing a finger he bit off an adversary. Some critics have called the book a wildly embellished tale of his role in Whitey's world.

MacKenzie's book is also frank about how hard he has found it to leave behind his criminal life.

"Crime is a way of life, an addiction," he writes.

In the final chapter, he observes: "Every day I face a choice: continue to change or fall back to the comfortable, darker ways of my predator side. Too often I retreat to scams and doing 'collections' for people. The money is good and easy, and the accompanying rush of adrenaline is probably close to what one gets in closing a legitimate business deal."

When asked whether she believes her former husband has changed his ways, Carla MacKenzie laughs ruefully before answering.

"There is no redemption in this story," she says. "I don't think Eddie could change even if he wanted to. . . . He preys on people with good hearts and takes them for what they are worth. I went through seven years of hell and therapy. I feel sorry for these people at that church."

In a criminal complaint for which Eddie MacKenzie is awaiting trial in Boston Municipal Court, Carla said that on Dec. 23, 2002, a month after he was accepted as a member of the church, Eddie called her after finding out she was a witness against him in a worker's compensation fraud case. According to the complaint, she told police that he "swore on his kids' life that he would kill her if she ever testified against him." Specifically, she said, he would have her "legs chained to a cinder block and have her thrown over a bridge."

MacKenzie says that his former wife is lying, and that she has a pathological desire to destroy him.

Though he vigorously defends his honor in the pending case, MacKenzie says

he understands why some people would think ill of him.

"For some people, I'm always going to be a scumbag," he says. "There's nothing I can do about that."

Ellis, for his part, sees MacKenzie as bringing just the sort of new blood the church needs. Unlike some of those now complaining about the new direction of the church, he said, MacKenzie has not missed a service since joining.

"The disgruntled people said: 'We need doctors and lawyers and professionals. We don't need bums.' Well, I found that under the bum stuff were some brilliant people," Ellis says.

MacKenzie also sees snobbery behind the opposition.

"There are about six or seven families who are complaining," he says. "This church was the best kept secret on Beacon Hill. These people were taking care of their families and their relatives, not the church. . . . We've opened up the church, and we're going to continue to open it up."

Certainly, the new regime has brought many new members in. Church records show that at least 45 of its 105 members joined the church over the past two years, 28 of those in just the past year. MacKenzie said he's brought in about 10 friends and relatives.

Ellis says that shows an open-door policy. Disgruntled members say the new regime stacked the pond with loyalists.

Ellis, meanwhile, says he is not troubled by MacKenzie's notorious past.

"Paul," the minister said, "was a murderer" before he became a saint.

Other Swedenborgians are more skeptical. The Rev. Les Woofenden, pastor of a Swedenborgian church in Bridgewater, says he read MacKenzie's book and was disturbed.

"I'm a minister, and I believe in redemption," Woofenden says. "I believe people can reform. But I'm also a pragmatic person, and I don't believe that you take people who have been convicted of wrongdoing and put them in charge of your church. I think the Boston church has acted irresponsibly by putting a convicted felon in such a position of authority."

## Financial maneuvers

Whether it is bold leadership, or, as the lawsuit alleges, some sort of self-serving conspiracy, the new power brokers at the church have been hard at work.

Late last year, John B. Burke, who replaced MacKenzie as treasurer Dec. 6, just a month after becoming a church member, began approaching property developers, asking if they were interested in converting the apartment building into condominiums.

Burke is the former co-owner of a South Boston nightclub who now works at a real estate firm on Cape Cod. In the early 1990s, he unsuccessfully tried to open an upscale strip club in the Combat Zone.

A Boston College graduate, he was an enthusiastic convert to Swedenborgianism. Upon being accepted as a member of the church in November he asked to be baptized in the Charles River.

And he is bringing his business smarts to bear on church finances. Once property developer who saw the church's proposal Burke was shredding among potential investors, and who asked not to be identified, told the Globe, "They are looking for the capital and the ability to convert it."

The developer said the church's proposal estimated that, depending on the

quality of the converted condos, the project could fetch up to $7.5 million — proceeds that, if properly invested, the church could live off of perpetually. Former leaders of the church said they, too, had considered selling off the building but decided that funding the church with steady rents was a better option than cashing out.

Filings in the secretary of state's office, meanwhile, show that MacKenzie and Burke formed a private real estate company, Harborview Real Estate Corp., on Nov. 12. It was, it happens, one day before the attorney general wrote to the church, demanding its records.

Burke says the idea of converting the apartments to condos is just one of several options the new leadership is considering. "These are very informal discussions," he says.

Burke says that Harborview is owned by the church, that it was created as "an investment vehicle" in which church leaders could have access to church funds that were previously tied up with the company that manages the apartment building. He says $850,000 was deposited into Harborview, with "a lot of money in annuities," and that the new corporation provides "normal diversified" flexibility.

Hendrick, the church's lawyer, says MacKenzie was recently removed as an officer of Harborview, which he described as being wholly owned by Rostovview, the corporation that owns the apartment building, which is wholly owned by the church.

If Harborview was created legally, it was also created quietly. Several church members told the Globe they've never heard of it.

The Globe obtained an internal church document showing that church trustees and directors on Nov. 12 authorized Kennedy to borrow $350,000 from the church to buy a $433,500 home in Plainville. Kennedy said he subsequently turned down the loan.

"I declined it because of everything that was going on," he says. "The timing was wrong."

John Perry, who was baptized in the Boston church in 1929 and who was voted off the board of trustees last year, says the sudden, wholesale change in leadership,

and the moving of large sums of money, was rash.

"It makes no sense, but it makes cents, in dollars and cents," says Perry, who is suspicious of the new leaders.

## The future

The attorney general is looking over their shoulder. Their erstwhile co-religionists have sued them. But the new leaders say they are undaunted as they reconfigure their obscure church into what they hope is a bigger presence in the city.

On Feb. 8, about 50 people gathered at the church for the 316th birthday of Emanuel Swedenborg. They listened as a Croatian minister for a different Swedenborg sect described how when he took over a church in Pennsylvania years ago, the congregation was fighting among itself. The older members thought they had the right to dictate to the younger ones. Sitting in a chair behind the visiting preacher, Steve Ellis closed his eyes and nodded.

"Praise God," Ellis said.

After the service, the congregation, many of them elderly, a few of them children, moved upstairs and took their seats on long tables with paper tablecloths and plastic cups of juice and soda to watch a play about Swedenborg's correspondence with the Queen of Sweden. Two actors in period costumes traded bon mots, a performance that was greeted with a mixture of smiles and seeming bewilderment from the audience.

"Most of these people are poor," Eddie MacKenzie said, surveying the room from the back, his arms folded.

He says these people are getting better food, better treatment, more respect, than they did under the old regime. There are more field trips. He's started a senior luncheon.

MacKenzie's got plans, big plans. He envisions the church putting on more theatrical performances for a wider public. He likes the idea of the church sponsoring youth athletic teams.

"Why not a team from Southie and a team from Roxbury, wearing uniforms with the church's name on them?" he asks.

All this costs money, but as Eddie MacKenzie says, "We've got the money."

## History of the church

**1688** — Emanuel Swedenborg born in Stockholm, Sweden.

**1745** — Swedenborg says God appeared to him and told him a human was needed to serve as the means by which God would further reveal himself to mankind. Thus began Swedenborg's spiritual life.

**1749** — Swedenborg publishes his first theological work, anonymously, called "Heavenly Secrets."

**1772** — Swedenborg dies.

**1787** — Fifteen years after Swedenborg's death, a group of 11 followers in London form the Church of the New Jerusalem based on his theological works.

**1817** — The first New Jerusalem church in the United States is founded in Pennsylvania. It becomes the Swedenborgian Church of North America.

**1818** — A Boston congregation of the church is founded by a group of Harvard University students and alumni. It becomes the fourth American congregation.

**1844** — The Boston congregation builds its first major church, on Bowdoin Street near Beacon Hill, with seating for 1,000.

**1966** — With membership dwindling, the Bowdoin Street church is torn down and replaced by an apartment building over a smaller chapel with seating for 100.




The interior and exterior of the Bowdoin Street church, before it was torn down in 1966 and replaced with a smaller chapel and an apartment building.