UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE GENERAL CONVENTION OF THE NEW JERUSALEM IN THE UNITED STATES OF AMERICA, INC., THE MASSACHUSETTS ASSOCIATION OF THE NEW JERUSALEM (SWEDENBORGIAN) and GEORGE CHAPIN,<br>    Plaintiffs,<br><br>v.<br><br>EDWARD MACKENZIE, THOMAS KENNEDY, BOSTON SOCIETY OF THE NEW JERUSALEM, INCORPORATED (SWEDENBORGIAN) and BOSTONVIEW CORPORATION,<br>    Defendants. | CIVIL ACTION<br>NO. 04-10419-WGY |

**EDWARD MACKENZIE AND THOMAS KENNEDY'S
<u>RENEWED MOTION TO DISMISS THE COMPLAINT</u>**
(Memorandum Incorporated)

## INTRODUCTION

Edward MacKenzie ("MacKenzie") and Thomas Kennedy ("Kennedy") (collectively "Defendants") respectfully renew their motion to dismiss the Complaint in its entirety. At oral argument on Defendants' original motion to dismiss on April 28, 2004, the Court invited Defendants to renew their motion upon the entry of a consent judgment in the state action by the Office of the Attorney General for the Commonwealth of Massachusetts ("Attorney General"). The Consent Judgment in that action, <u>Commonwealth v. Boston Society of the New Jerusalem, Inc.</u>, Suffolk Superior Court,

Civil Action No. 04-2597, has now been filed.[1] Accordingly, Defendants' renewed motion to dismiss under Efron v. Embassy Suites, Inc., 223 F.3d 12 (1st Cir. 2000), and Camelio v. American Federation, 137 F.3d 666 (1st Cir. 1998), is now ripe.

As the Court is aware, Defendants believe this lawsuit is meritless and simply the by-product of "sour grapes" by a tiny number of members of the Boston Society of New Jerusalem, Inc. ("the Church") who were voted out of leadership positions by an overwhelming majority of their co-members. As reflected in the Consent Judgment, the Attorney General conducted a comprehensive investigation of the Church, including Bostonview Corporation ("Bostonview"), which owns and manages apartments and investments on behalf of the Church, and Harborview Corporation ("Harborview"), which is an investment vehicle for Bostonview. The Attorney General also investigated the involvement of Kennedy and MacKenzie in the operations of the Church. The Attorney General focused particularly on the Church's ongoing corporate governance and its past and future expenditure of funds. Without any finding or admission of wrongdoing, and solely to reach resolution, the Attorney General and Defendants agreed to the Consent Judgment. (Consent Judgment, ¶11)

With the entry of the Consent Judgment, the Attorney General will oversee the Church to ensure that it continues to be operated in a manner that is reasonable and consistent with its status as a public charity. As the Court expressed at the hearing on Defendants' original motion to dismiss: "[I]f the Attorney General is satisfied that the

---

[1] A copy of the Consent Judgment is attached at Exhibit A to the Church and Bostonview's Renewed Motion to Dismiss. It is well established that the Court, on a motion to dismiss, may take judicial notice of this public record. See Branch v. FDIC, 825 F.Supp. 384, 398 n.8 (D. Mass. 1993). See also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

charity is being properly run and proper safeguards are in place, but for some sort of historic quarrel that [Plaintiff] may have, there's not much left here." Transcript at 8.

Defendants agree that with the Attorney General's oversight of the Church's future operations Plaintiff's RICO claims fail as a matter of law since there is no plausible threat of continuing future racketeering activity. Efron, 223 F.3d at 19-20. As for alleged past racketeering, Plaintiff has failed to, and cannot, plead sufficient facts to establish that Defendants engaged in racketeering activity over a sufficient period of time to prove their involvement in a "pattern" of predicate criminal acts. Id.; Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003).

For these reasons and the reasons advanced in Defendants' original motion to dismiss, including their memorandum and reply memorandum which are incorporated herein by reference, Plaintiff's RICO claims should be dismissed. Because Plaintiff's RICO claims are the only federal claims that have been asserted here and there is no diversity jurisdiction, the Court should dismiss the Complaint in its entirety. See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998).

## CONSENT JUDGMENT

Under the terms of the Consent Judgment, the Attorney General has assumed oversight of the Church's finances and corporate governance. Most significantly, the Church is required to hire an Interim Chief Financial Officer, to be approved in writing by the Attorney General, who shall have responsibility for:

> monitoring and controlling all financial and accounting transactions required for the Church, Bostonview and Harborview, including the day-to-day financial operations of the Church; reporting … to the … Attorney General on financial matters; reviewing and adjusting salaries in consultation with the Church's Compensation Committee and other forms of compensation, to make sure that any compensation paid is reasonable

and appropriate; ensuring that the Church fully complies with its legal obligations and the requirements of this Consent Judgment; ensuring that all expenditures are appropriate and consistent with the Church's omission; and taking any and all other actions to ensure financial responsibility and accountability for the Church. (Consent Judgment, ¶¶7-8)

The Interim Chief Financial Officer must report quarterly to the Attorney General "concerning the finances of the Church," including any financial issues or concerns that may exist and any recommendations for improving the financial operation of the Church. (Consent Judgment, ¶8)

The Consent Judgment also prohibits: (1) the transfer or encumbrance of any capital asset valued at over $10,000 without providing advance notice and an accounting to the Attorney General; and (2) the transfer of any asset to an individual or for-profit entity (a) without appropriate approvals by the entire Board of Trustees and the Voting Members of the Church, (b) without receiving "full, fair market value" for the asset, and (c) without furthering the Church's mission.[2] (Consent Judgment, ¶¶3-4)

## ARGUMENT

Even viewing the Complaint in the light most favorable to Plaintiff, the allegations do not, and cannot, establish a "pattern" of alleged racketeering activity as (i) Plaintiff's conclusory allegations about continuing criminal activity have no reasonable basis given that the Consent Judgment has entered and the Attorney General has assumed oversight of the Church, and (ii) the alleged past predicate acts occurred over an insufficient period of time and were at most merely part of an alleged, single scheme to take control of the Church and its assets.

---

[2] With respect to Church membership, the Attorney General considered and approved a list of Church members authorized to vote on all Church matters ("the Voting Members"). Notably, that list, which is attached hereto, includes all of the members who were voting on Church matters as of December, 2003, including all those whom Plaintiff alleges were invalidly accepted into the Church. (Consent Judgment, ¶4)

1. **The Consent Judgment Eliminates Any Threat Of Future Criminal Conduct And Thus Forecloses The Possibility Of An "Open-Ended" <u>Pattern Of Racketeering Activity</u>.**

With the entry of the Consent Judgment, the Attorney General has assumed significant oversight over the governance and financial affairs of the Church. The Attorney General will participate in appointing an Interim Chief Financial Officer, who, on behalf of the Attorney General, will monitor and control all of the Church's financial and accounting transactions, including the day-to-day financial operations of the Church, and will ensure that the Church complies with all of its legal obligations and otherwise acts responsibly and with accountability to the Attorney General.

Given this and other safeguards put in place under the Consent Judgment, Plaintiff cannot now under any circumstances claim, in good faith, that Defendants pose any threat of engaging in future criminal activity relating to the Church and the disposition of its assets. Accordingly, Plaintiff is incapable of establishing an "open-ended" pattern of racketeering activity and Plaintiff's RICO claims should be dismissed. <u>See, e.g., Efron</u>, 223 F.3d at 19-20.

2. **Plaintiff Has Alleged At Most Only A Single Racketeering Scheme Over An Eleven Month Period To Take Control Of The Church Which <u>Is Not Actionable</u>.**

In the Complaint, Plaintiff alleges that Defendants engaged only in a single scheme over an eleven-month period to take control of the Church and its assets (147 apartments in an apartment complex) in order to enrich themselves. <u>See</u> Complaint, ¶¶ 1, 6. The allegations fail to meet the "pattern" requirement because a single scheme to gain control of an organization is not actionable, nor is alleged criminal activity that lasts only eleven months.

The First Circuit and other courts have unambiguously held that a single scheme to obtain control of an organization and its assets does not satisfy the "pattern" requirement of RICO, even where the defendants commit multiple racketeering acts over a period of time in order to accomplish that objective. See, e.g., Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003) ("efforts ... directed toward one transaction . . . '[do] not comprise or threaten the kind of continued criminal activity at which the RICO statue was aimed.'" (quoting Systems Management, Inc. v. Loiselle, 303 F.3d 100, 106 (1st Cir. 2002)); Efron v. Embassy Suites, Inc., 223 F.3d 12, 19-20 (1st Cir. 2000); Vicom, Inc. v. Harbridge Merchant Serv., Inc., 20 F.3d 771, 782-83 (7th Cir. 1994). See also Defendants' Motion to Dismiss, at 7-9.

The First Circuit's decision in Efron is controlling. In Efron, the First Circuit affirmed the dismissal of a civil RICO suit in which one partner alleged that other partners, through multiple acts of alleged fraud, attempted to force him to relinquish his interest in the partnership's asset, a resort hotel in Puerto Rico. Efron, 223 F.3d at 13-14. The First Circuit found that the multiple alleged predicate acts formed part of a single scheme by the other partners, during a relatively "modest" period (21 months), to obtain unrestricted control of the hotel. Id., at 19. The First Circuit held that the plaintiff's allegations were insufficient to show a "pattern" of racketeering and "cannot be a RICO violation." Id., at 21.[3]

---

[3] Contrary to Plaintiff's mischaracterization of Efron (see original Opp., at 17 n.12), the court in fact recognized that the alleged racketeering acts (fraudulent capital calls and "sweetheart" side-deals) were continuing and that the defendants might continue to engage in some limited racketeering acts to accomplish their goal (to obtain full control of the partnership and its hotel). Efron, 223 F.2d at 20 ("It is true that the scheme as alleged already had spanned twenty-one months, and that its exact endpoint could not be ascertained from the pleadings ....") (emphasis added). Thus, even if Defendants' alleged racketeering were continuing, which the Attorney General's oversight precludes, Plaintiff's RICO claim would still fail because the alleged racketeering forms part of a single scheme to obtain control of one organization's assets.

6

This Court recently dismissed RICO claims in another virtually identical case, Giuliano v. Fulton, Civil Action No. 03-11293-REK (D. Mass. 2003) (Keeton, J.) (attached to Defendants' original Motion to Dismiss). In Giuliano, the amended complaint "reveals only one alleged scheme focused on the single goal of wresting control of a single property from plaintiffs." Id., at 10. This Court dismissed the plaintiff's complaint, after finding that "First Circuit precedent and precedent from several other circuits 'firmly rejects RICO liability where the alleged racketeering acts … , taken together, … comprise a single effort to facilitate a single financial endeavor.'" Id., at 11-12 (citing Efron, 223 F.2d at 19) (internal quotations omitted).

Moreover, to establish the "closed-ended" pattern of racketeering activity, a plaintiff must allege multiple predicate acts of racketeering that, at a minimum, have continued over a "substantial period of time." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989). According to Plaintiff's allegations, Defendants' alleged racketeering lasted at most for only eleven months. (See original Opp. at 17 n.13). The First Circuit and other jurisdictions have determined that such a short period is insufficient to meet the requirement for closed-ended continuity. See Efron, 223 F.3d at 19; Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44-46 (1st Cir. 1991) (multiple acts of alleged mail fraud over two year period insufficient); Hughes v. Consol-Pennsylvania Coal Co., 945 F.2d 594, 611 (3d Cir. 1991) (twelve months inadequate), cert. denied, 112 S.Ct. 2300 (1992); Primary Care Inv. v. PHP Healthcare Corp., 986 F.2d 1208, 1215 (8th Cir. 1993) (ten to eleven months inadequate); Vicom, 20 F.3d at 780-782 (nine-month period of multiple acts of mail and wire fraud too brief).

## CONCLUSION

For the reasons described above, Plaintiff's RICO claims should be dismissed. With the dismissal of the RICO claims, the Court should dismiss the entire Complaint as there is no basis to retain supplemental jurisdiction over the remaining state law claims.

>Respectfully submitted,
>Defendants
>EDWARD MACKENZIE and
>THOMAS KENNEDY,
>
>By their attorneys,
>
>/s/ Nicholas B. Carter
>Howard M. Cooper (BBO #543842)
>Nicholas B. Carter (BBO #561147)
>Todd & Weld LLP
>28 State Street, 31st Floor
>Boston, MA 02109
>(617) 720-2626

Dated: June 14, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served by hand on counsel for Plaintiffs, Christopher Trombetta, Esq., Holland & Knight, LLP, 10 St. James Avenue 11th Floor, Boston, MA 02116, and by hand on counsel for Defendants Boston Society of the New Jerusalem, Inc. and Bostonview Corporation, Richard McCarthy, Esq., Edwards & Angell LLP, 101 Federal Street, Boston, MA 02110, this 14th day of June 2004.

>/s/ Nicholas B. Carter
>Nicholas B. Carter, Esq.