UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GENERAL CONVENTION OF THE NEW JERUSALEM IN THE UNITED STATES OF AMERICA, INC., THE MASSACHUSETTS ASSOCIATION OF THE NEW JERUSALEM (SWEDENBORGIAN), and GEORGE CHAPIN,<br>　　　　　Plaintiffs,<br><br>v.<br><br>EDWARD MACKENZIE, THOMAS KENNEDY, BOSTON SOCIETY OF THE NEW JERUSALEM, INCORPORATED (SWEDENBORGIAN), and BOSTONVIEW CORPORATION,<br>　　　　　Defendants. | C.A. No. 04-10419-WGY |

**REPLY MEMORANDUM IN RESPONSE
TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' BOSTON
SOCIETY OF THE NEW JERUSALEM, INC. AND BOSTONVIEW
CORPORATION'S RENEWED MOTION TO DISMISS**

### I.　PRELIMINARY STATEMENT

This Memorandum is respectfully submitted in response to Plaintiff's Opposition to the Renewed Motion of Defendants Boston Society of the New Jerusalem, Inc. (the "Church") and Bostonview Corporation ("Bostonview") to Dismiss (the "Opposition").

Once again, the Plaintiffs have proven only two things: their ability to sling sensational accusations, and their complete inability to frame viable legal arguments in support of the claims alleged in the Complaint. The Opposition contains undocumented assertions and selected document and deposition discovery materials, which should not be considered by the Court in

the context of a Motion to Dismiss.  Moreover, all of these matters have been reviewed and considered by the Church and by the Office of the Attorney General for the Commonwealth of Massachusetts (the "Attorney General") pursuant to the Civil Investigation Demands issued in <u>Commonwealth v. Kennedy, et al.</u>, Suffolk Superior Court Civil Action No. 03-5408A, resulting in the Complaint and Consent Judgment filed and entered in <u>Commonwealth of Massachusetts v. Boston Society of the New Jerusalem, Inc.</u>, Civil Action No. 04-2597 (collectively, the "Suffolk Superior Court Actions").  Even in advance of the Consent Judgment, the Church, in cooperation with the Attorney General, voluntarily took a number of steps to address other issues, which are summarized in a letter, dated June 16, 2004, to the Attorney General (the "June 16 letter").[1]

In sum, all matters involving the Church's conduct of its affairs have been resolved and adjudicated, and are subject to the ongoing supervision of the Attorney General and the jurisdiction of the Suffolk Superior Court.  In any event, none of the Opposition materials has any bearing on the issues presently before the Court – abstention, subject matter jurisdiction, standing, First Amendment, and Plaintiffs' failure to state a claim with respect to Counts IV and V of the Complaint against the Church and Bostonview.

## II.   ARGUMENT

**A.   NEITHER MACKENZIE NOR KENNEDY'S CONDUCT CAN HAVE ANY EFFECT ON THE VIABILITY IN FEDERAL COURT OF THE TWO DECLARATORY JUDGMENT CLAIMS AGAINST THE CHURCH AND BOSTONVIEW**

The Opposition begins by stating the following as the basis for its entire argument:

> Briefly stated, that motion [Renewed Motion to Dismiss] should be denied because the Consent Judgment executed by the Defendants and the Attorney General supports

---

[1] Because the letter and the documents referenced in the letter are confidential, and since the Court has ordered that confidential documents should not be filed, Defendants will not electronically file or deliver to the Clerk's Office a copy of the June 16 letter.  Instead, Defendants will deliver a copy of the June 16 letter directly to chambers under separate cover.

Plaintiffs' claim that Defendants MacKenzie and Kennedy have misappropriated assets for the Church.

Plaintiffs' argument is both irrelevant to the two claims asserted against the Church and Bostonview, and has been disposed of by the Consent Judgment. Whether Kennedy or MacKenzie misappropriated assets – which is expressly denied – cannot affect a claim concerning the disposition of Church assets under Church bylaws upon dissolution (Count IV), or a claim concerning the Church's procedure for admitting members (Count V). And if there have been any missteps by Kennedy or MacKenzie, they have been resolved by the joint action of the Church and of the Attorney General, and formally concluded through the Consent Judgment.

The Complaint which commenced the Suffolk Superior Court Actions specifically asserts in Paragraphs 7, 12 and 16, that certain officers and directors of the Church, Bostonview and Harborview, and their relatives, received substantial and, on occasion, excessive compensation payments and/or benefits. The Consent Judgment itself further provides that the Interim Chief Financial Officer will review and adjust, in consultation with the Church's Compensation Committee, salaries and other forms of compensation to make sure that any compensation paid is reasonable and appropriate. Consent Judgment, ¶ 7.

In determining what remedy was necessary and appropriate from his perspective, the Attorney General received and reviewed documents produced by the Church in 2003 and 2004 so that the Attorney General became aware of all Church, Bostonview and Harborview financial transactions. To the extent the Attorney General may later become aware of any improper use of Church assets, the Consent Judgment reserves for the Attorney General the right to take further action. Id. ¶10.

The Consent Judgment reflects a cooperative effort to address issues which arose as an outgrowth of the Church's transitional turmoil – turmoil that the present litigation only prolongs and exacerbates. The Consent Judgment works because it was crafted as an overlay on the existing Church leadership, while providing the Attorney General with ongoing financial oversight through an Interim Chief Financial Officer who monitors and controls all financial and accounting transactions required for the Church, Bostonview, and Harborview. Id. ¶ 7. The Interim Chief Financial Officer is hired by the Church, but must be approved in writing by the Attorney General. The Attorney General investigation was a process in which the Church cooperated fully, and as matters arose requiring corrective action, the Church took such action voluntarily, in advance of any consent judgment. See the June 16 letter. The Attorney General, who was fully informed through the investigative process, deemed those actions to be sufficient.

The Church's leadership has worked co-operatively with the Attorney General to identify, and deal with, any past errors, and welcomes the Consent Judgment and its procedures as a way of assuring itself, its members and the outside world that the Church is properly managing its affairs. The Church is not Mr. Chapin, or Mr. MacKenzie, or Mr. Kennedy. Nor does the Church speak with a single voice. It is comprised of approximately one hundred members, most of whom have been members of the Church since before 2002. It includes a Pastor (the Reverend Steven Ellis) who has been Pastor since 1982, an Associate Pastor (the Reverend Dr. Ted Klein) who has assisted the Reverend Ellis since 1997, and has been Assistant/Associate Pastor since 2002, and a Minister of Music (Juliet Cunningham) who has been in charge of the Church's music program since the early 1990s. The Church has responded positively to the Consent Judgment as a vehicle to help manage its financial affairs, to put these issues in the past, and to permit the Church to continue to minister the needs of its members.

The pendency of litigation now that the Church has embarked on this course with the Consent Judgment entered will only add to the internal turmoil and interfere with the Church's internal healing process.

**B.    THE OPPOSITION PRESENTS NO NEW ARGUMENT OR CASE AUTHORITY REBUTTING DEFENDANTS' GROUNDS FOR DISMISSAL.**

In opposing the Defendants' Renewed Motion to Dismiss – which the Court invited Defendants to file once the Consent Judgment had been entered in the Superior Court – the Plaintiffs rehash the same arguments, peppered with a few excerpts from the discovery that has taken place to date. Indeed, large portions of the Opposition appear simply to have been lifted wholesale from their earlier filings.

Rather than burden the Court with pages of repetitive argument, Defendants simply will summarize below the many arguments – none of which have been rebutted by the Plaintiffs – against the continued prosecution of this case in this Court:

- At least two federal abstention doctrines – Younger abstention and Burford abstention – require the dismissal of the pending claims because of the Superior Court proceedings and because of Massachusetts' comprehensive regulatory scheme that covers that claims at issue in this case. See Younger v. Harris, 401 U.S. 37 (1971); Trainor v. Hernandez, 431 U.S. 434 (1977); Worldwide Church of God, Inc. v. State of California, 623 F.2d 613 (9th Cir.1980) (holding abstention was appropriate where state attorney general brought action against church regarding misappropriation of finances); Burford v. Sun Oil Co., 319 U.S. 315, 332 – 33 (1943).

- If the RICO claims against Defendants MacKenzie and Kennedy are dismissed, there is no basis for this Court to exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991); Brayall v.

Dart Indus., 1988 WL 72766, *4 (D. Mass. Feb. 3, 1988), aff'd, 989 F.2d 484 (1st Cir. 1993). Plaintiffs' arguments in favor of the exercise of supplemental jurisdiction merely attempt to show that the Court *may* exercise supplemental jurisdiction. They make no attempt to address the far more important question of whether this Court *should* exercise supplemental jurisdiction – which it clearly should not.

- Plaintiffs do not and cannot dispute that the Massachusetts Supreme Judicial Court ("SJC") has the exclusive authority to determine the dissolution of public charities such as the Church. See Mass. Gen. L. ch. 180, § 11A. Thus, Count IV's claim under the bylaws that the Church's assets must be transferred to the General Convention can only be presented through a dissolution proceeding in the SJC.

- The Plaintiffs lack standing. Chapin has no claim to the assets of the Church even if the Church had dissolved (which it has not), and he concedes that he remains a voting member of the Church. While he argues that the value of his vote has been "diluted," he has continually failed to cite a single case in support of his proposition that dilution of a vote, as opposed to actual removal of voting rights, gives him sufficient individualized standing. The Massachusetts Association has no standing because it has no interest of any kind in either the assets of the Church or the voting rights of Church members. And to the extent that the General Convention could, in theory and under certain limited circumstances, have contingent rights to the Church's assets, those contingencies unquestionably have not happened since the Church has not dissolved. See Weaver v. Wood, 425 Mass. 270, 680 N.E.2d 918 (1997); Ames v. Attorney General, 332 Mass. 246, 124 N.E.2d 511 (1955); Lopez v. Medford Community Center, Inc., 384 Mass. 163, 424 N.E.2d 229 (1981).

- The language of the Church's by-laws is clear and unambiguous – there must be a literal "dissolution," *i.e.* a complete cessation of existence, in order for the asset-distribution provision to be triggered. Plaintiffs have offered no credible alternative interpretation of this provision, because it is not subject to any other reasonable interpretation. Given this unambiguous language, there is no basis for this Court to consider extrinsic evidence of the parties' intent. See <u>Bank v. International Business Machines Corp.</u>, 145 F.3d 420, 424 (1st Cir. 1998). The vague and unexplained statements of John Perry that the Church intended the by-law relating to "dissolution" to apply in the case of "disaffiliation" as well – even though the by-law makes no mention of disaffiliation – are, therefore, wholly irrelevant, not to mention devoid of common sense.[2]

- Plaintiffs' argument that the First Amendment has no bearing on Count V because Count V is a simple property dispute is absurd. Both membership in a church and confirmation in a church necessarily implicate religious doctrines, and are far less a property right than a minister's right to employment by a church, which the Supreme Judicial Court found not be subject to judicial review because of the First Amendment. <u>Callahan v. First Congregational Church of Haverhill</u>, 441 Mass. 699 (2004). The same analysis is equally applicable to the Count IV claim. Recognizing that the Church has not actually dissolved, Plaintiffs now argue that the disaffiliation from the General Convention was a *de facto* dissolution because of the allegedly long and fundamental relationship between the General Convention and the Church. By Plaintiffs' own argument, then, the Court would need to conduct a detailed analysis of the

---

[2] In their brief (at p. 11), Plaintiffs characterize Perry's affidavit as stating that the by-law provision regarding dissolution was adopted at a time when another entity was threatening to take over the church. Plaintiffs completely misrepresent the content of that affidavit. In fact, Perry's affidavit makes no mention whatsoever of any other entity making any threat at any time to do anything to the Church, let alone take it over. Perry merely asserts, without explanation, that the provision was added "at a time when [the Church] believed that disassociation of the Boston church could occur." Perry Aff., ¶ 5.

history and doctrines not only of the Church, but of the General Convention as well, and to pass upon the significance and importance of that history and doctrine.  That is precisely the government entanglement with religion that Callahan, supra, and the cases preceding it, sought to prevent.[3]

### III.  CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion to Dismiss should be granted and the complaint dismissed as to Counts IV and V.

Respectfully submitted,

BOSTON SOCIETY OF THE NEW JERUSALEM, INC. and BOSTONVIEW CORORATION,

Defendants

By their attorneys,

/s/ Brian H. Lamkin
Richard J. McCarthy (BBO# 328600)
Brian H. Lamkin (BBO# 635688)
EDWARDS & ANGELL LLP
101 Federal Street
Boston, MA  02110
(617) 439-4444
(617) 439-4170 (fax)

---

[3] Furthermore, Plaintiffs' entire argument for transfer of the property is premised on the validity of the Church vote to disaffiliate from the General Convention – and Plaintiffs themselves challenge the validity of that vote because they contend many of the members who voted were not properly admitted to the Church.  Thus, resolution of Count IV, not just Count V, will require the Court to pass judgment on core issues of doctrine and faith in determining who ought to be considered a valid Church member.